UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LAPINSKE, JEROLD
LAPINSKE, CASSANDRA LAPINSKE,    Case No: 19 - CV - 00162
ALYSSA MARTORANO, and JAMES
LAPINSKE,

                Plaintiffs,

v

CITY OF GRAND HAVEN,

                Defendant.

---

**EXPEDITED CONSIDERATION REQUESTED**

**PLAINTIFFS' MOTION TO EXCUSE ATTENDANCE AT MEDIATION**

Plaintiffs, by their attorney, John D. Tallman, for their motion to excuse attendance at mediation, state as follows:

1.    Pursuant to this Court's First Case Management Order of July 31st, 2019, mediation was scheduled with Jon March to occur December 17th, 2019.

2.    Pursuant to the letter of Mr. March of September 10th, 2019, Plaintiffs planned to attend mediation by being "represented by a person or persons with full settlement authority . . ." Exhibit A, Letter of Jon March September 10th, 2019.

3.    Those persons designated by all five Plaintiffs as having full settlement authority were Jeffrey and Jerold LaPinske.

4.     That during the pre-mediation telephone conference of December 9th, 2019, defense counsel voiced his objection to the group of five Plaintiffs being represented at mediation by Jeffrey and Jerold LaPinske.

5.     That in a subsequent email of December 9th, 2019, Plaintiffs' counsel explained the hardships that would be imposed by requiring the in-person attendance of the remaining three Plaintiffs, James LaPinske, Alyssa Martorano, and Cassandra LaPinske, explained that those three Plaintiffs would be available by telephone during mediation, and asked again for the agreement of defense counsel to proceed with mediation as planned on December 17th with Plaintiffs being represented by Jeffrey and Jerold LaPinske, in person. Again, defense counsel refused to agree by stating: "We will need to adjourn. This is not acceptable." Email of Mr. Fields of December 9th, 2019.

Mr. March also emailed on December 9, stating that while he is still able to mediate the case on December 17th, he also would attempt to find time to mediate the case before the deadline of January 30th, 2020, if necessary, as established by the Court's First Case Management Order.

6.     That as explained in Plaintiffs' counsel's email, James LaPinske is the father of Jeffery and Jerold LaPinske. James is 83 years old, lives in Neshkoro, Wisconsin, and suffers from a type of leukemia known as acute myelodysplastic syndrome. James agrees that his sons, Jeffery and Jerold have full authority to settle the claim at mediation, and he has agreed to be available by telephone during mediation. Because of his age and illness, he is frail. Traveling to Grand Rapids would be a hardship for him.

7.     Alyssa Martorano is the daughter of the son of James and the brother of Jeffery and Jerold. She lives in Mohave Valley, Arizona. Alyssa is a young, stay-at-home

2

mom with two daughters, ages 3 and 6, whose husband works for the railroad and is gone for long periods of time. Because she is the primary care giver for the children, she could not attend mediation without great difficulty. Again, she has agreed that her uncles, Jeffery and Jerold, have full authority to settle the claim, and she has agreed to be available by telephone during mediation.

8. Cassandra LaPinske is a young woman who recently moved to Las Vegas from Wisconsin and just started a new job where she is on a period of probation. A loss of two days of work for mediation would lead to a loss of her job. Alyssa also has granted her uncles, Jeffrey and Jerold, full settlement authority and she has agreed to be available by phone during the course of mediation.

9. The Court's Voluntary Facilitative Mediation Program Description at paragraph G states in part: "The *parties themselves* must attend the mediation session in person." Paragraph G goes on to state that: "A party or lawyer will be excused from attending the mediation session in person only after approval by the Court upon showing extraordinary circumstances to excuse attendance."

10. Plaintiffs submit that the hardship that would be imposed by the attendance of James, Alyssa, and Cassandra at mediation constitute "extraordinary circumstances" sufficient to excuse their attendance.

Accordingly, Plaintiffs request the Court to grant their Motion to Excuse Attendance at Mediation.

JOHN D. TALLMAN, PLC
Attorneys for Plaintiff

Dated:  December 10, 2019

By: /s/ John D. Tallman
_____
John D. Tallman (P32312)

BUSINESS ADDRESS & TELEPHONE:
4020 East Beltline Ave NE - Suite 101
Grand Rapids, MI  49525
(616) 361-8850

### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing document(s) was served upon the attorneys of record or parties appearing in pro per in the above cause by mailing the same to them at their respective address(es) via United States Mail with postage prepaid thereon, via hand delivery, or via electronic mail on the 10th day of December, 2019.

/s/ Georgia Gene Palmatier
_____
Georgia Gene Palmatier, Notary Public
Kent County acting in Kent County, Michigan
My Commission Expires:        09/26/24

# EXHIBIT A



45 Ottawa Avenue SW
Suite 1100
P.O. Box 306
Grand Rapids, MI  49501-0306

MERITAS LAW FIRMS WORLDWIDE

**JON G. MARCH**
Attorney at Law

616.831.1729
616.988.1729  fax
marchj@millerjohnson.com

September 10, 2019

John D. Tallman, Esq.
John D. Tallman PLC
4020 E Beltline Avenue, N.E. – Ste. 101
Grand Rapids, MI  49525-9324

Geoffrey A. Fields, Esq.
Dickinson Wright PLLC
200 Ottawa Avenue, N.W. – Ste. 900
Grand Rapids, MI  49503-2427

Re:   Facilitative Mediation Retention Letter: *Jeffrey Lapinske, Jerold Lapinske, Cassandra Lapinske, Alyssa Martorano, and James Lapinske v City of Grand Haven*

Dear Counsel:

I am writing to confirm the recent communications between our offices regarding the above-referenced mediation and to set forth certain conditions regarding that mediation.

Please review this letter and then sign and return the duplicate copy to me, either by mail, facsimile (616-988-1729), or e-mail PDF (marchj@millerjohnson.com).  I must receive it prior to the mediation.

**Date and Place of Mediation**.  The facilitative mediation in this case will occur on **Tuesday, December 17, 2019** at our offices in the Arena Place Building, located at 45 Ottawa Avenue, S.W., Grand Rapids, Michigan 49503, beginning at 9:30 a.m.  Please come to the 11th floor reception area.  I enclose maps for your use and the use of your clients.

**Pre-Mediation Telephone Conference**.  My office will either schedule a telephone conference among all counsel in advance of the mediation, or failing that, I will call counsel individually.  The primary purpose of doing so is to assure that any work reasonably necessary to a meaningful mediation will have been completed prior to the mediation date.

**Conflicts of Interest**.  There does not appear to be any conflict of interest which would prevent me from serving as mediator.

My service as a facilitative mediator does not create an attorney-client relationship with either you or your clients.  My service as a mediator will not be the basis for a conflict of interest in any present or subsequent unrelated matter in which my law firm or I are involved as attorneys.

**Person Present With Full Settlement Authority**.  In order for facilitative mediation to work, it is essential that each party be represented by a person or persons with full

MILLER JOHNSON

John D. Tallman, Esq.
Geoffrey A. Fields, Esq.
September 10, 2019
Page 2

settlement authority, both in terms of monetary authority and any non-economic issue which may be involved. Please be certain that your clients and any insurance carrier are represented by persons with full settlement authority. This means that we must have present at the mediation the person or persons who are the decision maker(s), i.e., the person who has the authority to agree to the demands of the opposing party. This does not mean he/she must agree, only that he/she has the authority to do so.

**Public Entity**. In this case, one of the parties, City of Grand Haven, is a public entity subject to the requirements of open meeting and public notice statutes. Accordingly, it is impossible for all the legally required decision makers to be present at the mediation. Instead, the City should be represented at the mediation by the elected and/or appointed official(s) whose recommendation is likely to be followed by the appropriate public body. Any resolution reached at the mediation will be conditioned to the public body's ultimate approval of the recommended settlement.

**When you send me your mediation briefs, please include the name and title (or relation to the dispute) of the people who will be present with you.**

**Confidential and Privileged Process**. This facilitative mediation constitutes a privileged settlement discussion, and the documents and information exchanged during the mediation process are protected by that privilege (and in some cases by court rules) and cannot be used in any way in the course of the litigation. This does not mean, of course, that use of the facts and documents underlying the dispute are in any way limited. Nor does it mean that claims or defenses raised during the mediation are thereby insulated from further pleadings or discovery if the case is not settled. It does mean that the statements made during the mediation and any documents prepared specifically for use during the mediation cannot be used in later court proceedings, and you so agree. You further agree that as mediator I will not be called as a witness at any trial or hearing. All participants in the mediation are bound by this confidentiality requirement, including me as the mediator. At the end of this letter I have included an acknowledgment form for you to sign agreeing to the confidential nature of the mediation. If there is any dispute regarding the confidential nature of the mediation, this letter and your acceptance of it may be disclosed as proof of the agreement of confidentiality.

**Mediation Briefs**. I will need to receive some written materials in advance of the mediation which explain the nature of the dispute and the issues to be resolved. Please get them to me by **December 10, 2019**. Transmission by email (marchj@millerjohnson.com) is acceptable. **The parties should exchange their submissions**. If you believe I should be made aware of certain facts or issues prior to the mediation, but which you do not wish to share with the other party or parties, send me a separate submission, appropriately marked as confidential. If any party envisions the settlement containing complex non-monetary terms (e.g., a Consent Decree), submit a draft of what you propose so I can see what you have in mind.

**MILLER JOHNSON**

John D. Tallman, Esq.
Geoffrey A. Fields, Esq.
September 10, 2019
Page 3

---

There are two schools of thought regarding the content of the briefs. The first is that they should be kept as simple and as short as possible. From the point of view of the mediator, I favor this approach. Since I will not be determining or deciding anything, you do not need to persuade me of the correctness of your position. I simply need to know the relevant facts and the issues.

The second school of thought is that the briefs are really intended for the opposition, and so the more completely and persuasively you present your case, the better. There is some logic to this position. However, it is also important to remember that the ultimate goal is settlement, so it is best to avoid a completely adversarial tone.

I leave the choice between these two alternatives, or some middle ground, up to you. I will read whatever you submit. I do encourage all counsel to be sure their clients read all the briefs that are submitted, yours and the opponent's, so please get them copies in advance of the mediation.

**Billing**. My firm will bill you and your law firms (not your clients) for my services as mediator at the rate of $360/hour plus any out-of-pocket disbursements. I will bill for all the time spent on the matter, including file administration, communications with counsel, preparation for the mediation, travel (if any), and the mediation itself. You will receive an itemized billing. The bill will be divided equally between you. Payment should be made within thirty (30) days to Miller Johnson (tax ID #38-1603110), not to me personally.

**The Mediation Process**. You and your clients have the opportunity and right to help formulate the mediation process we will use. That is a subject we will address in the pre-mediation telephone conference. It may, however, be helpful for you to know the process I usually use because it seems to work best for me.

I do not believe that opening statements by counsel or the parties is ordinarily a good use of our time. If you disagree, let me know, and we will discuss it prior to the mediation.

I begin the mediation in a joint session with some brief remarks about the mediation process and what will be required from everyone for it to be a success. After those remarks, I may ask some questions about the case with everyone present. At some point I will separate the parties and begin caucusing with each. I will determine the order of those meetings after reading your written materials. During the course of these caucus sessions with each party, everything which you say is kept confidential. I will not discuss anything you say in caucus with any other party unless you specifically authorize me to do so. We may later reconvene as a group, or continue to use the caucus format, whatever seems to work.

MILLER JOHNSON

John D. Tallman, Esq.
Geoffrey A. Fields, Esq.
September 10, 2019
Page 4

---

If before or during the mediation you or your client has a suggestion regarding how best to proceed, please bring it to my attention. The mediation, including the process we use and any result, belongs to the parties, so I am always eager to receive this input.

**Documenting a Settlement.** If, as I expect, you are able to reach a settlement, we will prepare a Memorandum of Settlement which will contain a point-by-point summary of the agreement. Each party will sign it. The Memorandum of Settlement envisions the parties may later prepare more formal settlement documents, which will incorporate the points you agreed upon. The Memorandum of Settlement, however, will be sufficiently specific and complete to be enforceable, and the parties will so acknowledge. If there are non-economic terms to be included, you should think about those in advance of the mediation so they may be fully discussed, negotiated, and agreed upon.

**Downtime.** You and your clients should be aware that there will be a lot of waiting and downtime throughout the mediation. Because the process involves meeting individually and sometimes at length with the separate parties, this downtime is unavoidable. Therefore, I encourage you and your clients to bring along some other work, your lap top, a good book or whatever else might help pass the time. You will be in separate conference rooms, and there will be telephones available, a place to work, and refreshments.

**The Process Works.** It has been my experience that this process really does work, and the statistics of the United States District Court for the Western District of Michigan bear this out. For the process to work, however, all parties must approach the mediation in good faith, with a desire to achieve a settlement, and a willingness to compromise to do so. If one or both parties are not really interested in settling the case, except on their own predefined terms, then the process is largely a waste of time and results in an unnecessary expense.

**Preparing for Mediation.** I am sure you and your clients have given substantial thought to your legal position and its strengths and weaknesses, but I have some additional homework for you and your clients to complete prior to the mediation.

1. Consider what is your best alternative to a negotiated settlement. What is the best you can hope for if the case is tried?

2. Consider what is your worst alternative to a negotiated settlement. What is your worst nightmare if the case is tried?

3. Consider the settlement posture of the case and the answers to questions 1 and 2 above from the viewpoint of the other party. How do they view your dispute?

4. What are your real interests in this litigation?

MILLER JOHNSON

John D. Tallman, Esq.
Geoffrey A. Fields, Esq.
September 10, 2019
Page 5

---

     5.     Are there any non-monetary aspects to a possible settlement?

     6.     What will it take in time and money to try your case to conclusion? Are you prepared to expend that time and money?

**My Training and Experience**. For anyone interested, my training and experience as a mediator is summarized on my law firm's website found at www.millerjohnson.com.

If any of you have any questions, please call me. Otherwise, I will look forward to seeing you on **December 17, 2019**. I will work very hard to help you all reach a settlement.

Very truly yours,

MILLER JOHNSON

By *(signature)*
Jon G. March
Mediator

JGM/jy
Enclosures
cc: Christina K. McDonald, Esq.

---

I hereby agree to the conditions concerning confidentiality and privileged settlement discussions and to the payment of fees as set forth above.

Dated: _____    _____
                                   John D. Tallman