UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JEFFREY LAPINSKE, *et al.*, | Case Number 19-cv-00162-RJJ-RSK |
| Plaintiffs, | |
| | Hon. Robert J. Jonker |
| v. | |
| | Hon. Magistrate Judge Ray Kent |
| CITY OF GRAND HAVEN, | |
| Defendant, | **ORAL ARGUMENT REQUESTED** |
| and | |
| DANA NESSEL, MICHIGAN ATTORNEY GENERAL, in her official capacity, | |
| Defendant-Intervenor. | |

**BRIEF IN SUPPORT OF DEFENDANT CITY OF GRAND HAVEN'S
MOTION FOR SUMMARY JUDGMENT: ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF THE UNDISPUTED FACTS ......................................... 1

     A.     THE ESTABLISHMENT OF DUNCAN PARK ................................... 2

     B.     DUNCAN PARK IS COMPRISED OF TWO PARCELS – ONLY ONE OF WHICH IS AT ISSUE ............................................................. 5

     C.     PROCEDURAL HISTORY OF NASH LITIGATION AND RELATED CITY ORDINANCES ..................................................... 5

     D.     MRS. DUNCAN DIED LEAVING A WILL .................................... 10

     E.     PLAINTIFFS' CLAIMS ............................................................. 10

III.   ARGUMENT ............................................................................... 11

     A.     SUMMARY JUDGMENT STANDARD AND APPLICATION OF MICHIGAN LAW. ................................................................ 12

     B.     NONE OF PLAINTIFFS' CLAIMS APPLY TO THE CITY PARCEL. ........... 13

     C.     BECAUSE PLAINTIFFS ARE NOT REAL PARTIES IN INTEREST, THEY ARE NOT ENTITLED TO RELIEF. ...................................... 13

     D.     PLAINTIFFS HAVE NO STANDING UNDER MICHIGAN'S EPIC, SPECIFICALLY M.C.L. § 700.7413(3), TO PURSUE THESE CLAIMS. ....... 17

     E.     THIS COURT MUST ALSO REJECT THE SUBSTANCE OF PLAINTIFF'S CLAIMS. ............................................................. 18

         1.     NO EVENT HAS OCCURRED THAT WOULD TRIGGER THE REVERTER CLAUSE IN SECTION THREE OF THE TRUST DEED. ...................................................................... 19

         2.     THE TRUST DEED IS NOT "NULL AND VOID." ............................. 20

     F.     PLAINTIFFS' FEDERAL LAW CLAIMS ARE WITHOUT MERIT ............. 21

         1.     PLAINTIFFS WERE NOT ENTITLED TO NOTICE OF ANY ACTIONS IN RESPECT OF DUNCAN PARK. .................................. 21

         2.     THERE WAS NO "TAKING" OF A VESTED PROPERTY RIGHT. ...................................................................... 23

IV.   CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233 (6th Cir. 1992).................................. 12

*American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455 (7th Cir. 1982)............. 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242; 106 S.Ct. 2505; 91 L.Ed. 2d 202 (1986).......... 12

*Attorney Gen. v. Michigan Pub. Serv. Comm'n*, 249 Mich. App. 424; 642 N.W.2d 691
(2002).......................................................................................................... 23

*Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39 (6th
Cir. 1994) .................................................................................................... 13

*Comiskey v. Automotive Industry Action Group,* 40 F.Supp.2d 877 (E.D.Mich.1999)............... 12

*Ditmore v. Michalik*, 244 Mich. App. 569; 625 N.W.2d 462 (2001) ................................... 14, 15

*Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)............................... 12

*Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126 (6th Cir.1995)........................... 12

*Hahn v. Star Bank*, 190 F.3d 708 (6th Cir. 1999)........................................................ 22

*In re Edgar Estate*, 425 Mich. 364; 389 N.W.2d 696 (1986) ........................................... 16

*In re Estate of Bem*, 247 Mich. App. 427; 637 N.W.2d 506 (2001)..................................... 16

*In re Estate of Raymond*, 483 Mich. 48; 764 N.W.2d 1 (2009).......................................... 16

*In re Howlett's Estate*, 275 Mich. 596; 267 N.W. 743 (1936) ......................................... 16

*In re Jauw*, No. 305902, 2012 WL 4039277 (Mich. Ct. App. Sept. 13, 2012) .......................... 16

*In re Rood's Estate*, 41 Mich. App. 405; 200 N.W.2d 728 (1972)........................................ 14

*In re Smith Trust*, 480 Mich. 19; 745 N.W.2d 754 (2008) ............................................. 19

*Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824 (W.D. Mich. 2012)............................ 12

*Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459; 663 N.W.2d 447 (2003)............. 19, 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574; 106 S.Ct. 1348; 89
L.Ed.2d 538 (1986)......................................................................................... 12

*Millner v. DTE Energy Co.,* 285 F. Supp. 2d 950 (E.D. Mich. 2003) ................................. 12

*Modena v. Fed. Home Loan Mortg. Corp.*, No. 1:08-cv-887, 2009 WL 799072 (W.D. Mich. March 23, 2009) ................................................................................ 17

*Nash v. Duncan Park Comm'n et al.*, Nos. 331651, 331840, 331869 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *lv app. den'd*, 501 Mich. 953, 904 N.W.2d 864 (2018) ................................................................................ 1, 5, 9, 21

*Nash v. Duncan Park Commission*, 304 Mich. App. 599, 848 N.W.2d 435 (Mich. Ct. App. 2014), *vacated in part, denied in part*, 497 Mich. 1016, 862 N.W.2d 417 (2015) passim

*Nash v. Grand Haven*, 321 Mich. App. 587; 909 N.W.2d 862 (2017), *lv app denied*, 503 Mich. 870; 917 N.W.2d 404 (2018) ................................................................................ 17

*Phillips v. Ingham Cty.*, 371 F. Supp. 2d 918 (W.D. Mich. 2005) ............................ 12

*Special Property VI LLC v. Woodruff*, 273 Mich. App. 586; 730 N.W.2d 753 (2007) .............. 19

*Swanson v. Bixler*, 750 F.2d 810 (10th Cir. 1984) ................................................ 13

*United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785 (6th Cir.1997) .............. 12

*Weston v. Dowty*, 163 Mich. App. 238; 414 N.W.2d 165 (1987) ................................ 13

**Statutes**

42 U.S.C. § 1983 ................................................................................ 11

M.C.L. § 554.61 ................................................................................ 14

M.C.L. § 554.61(a) ................................................................................ 14

M.C.L. § 691.1401 ................................................................................ 6

M.C.L. § 700.1101 ................................................................................ 21

M.C.L. § 700.1103(m) ................................................................................ 15

M.C.L. § 700.1104(p) ................................................................................ 15

M.C.L. § 700.1108(b) ................................................................................ 15

M.C.L. § 700.2101(1) ................................................................................ 15

M.C.L. § 700.2720 ................................................................................ 15

M.C.L. § 700.7203 ................................................................................ 8

M.C.L. § 700.7411(3) ................................................................................ 22

M.C.L. § 700.7412 ............................................................................................................. 8

M.C.L. § 700.7412(1) ................................................................................................. 21, 24

M.C.L. § 700.7412(4) ....................................................................................................... 22

M.C.L. § 700.7413(3) ............................................................................................. 17, 18, 23

**Rules**

Fed. R. Civ. P. 17(a)(1) .................................................................................................... 13

Fed.R.Civ.P. 56(a) ........................................................................................................... 12

**Treatises**

Cameron, Jr., Michigan Real Property Law: Principles and Commentary, Vol. 1, §7.9, p.
   269 (2005) .................................................................................................................... 14

**Constitutional Provisions**

Mich. Const. 1963, art. X, §2 ..................................................................................... 11, 23

## I.    INTRODUCTION

In this action, Plaintiffs seek to deny the citizens of Grand Haven the use of Duncan Park, 40 acres of virgin forest parkland that for over 100 years has been held in charitable trust for the benefit of those citizens, contrary to the express directive of the donor of the park.   To accomplish their goal, Plaintiffs ask this Court to ignore multiple decisions of the Michigan courts and to instead deliver title to and possession of Duncan Park to them. Plaintiffs are non-resident private citizens who, until just before this lawsuit was filed, had never even heard of Duncan Park.[1] Plaintiffs lack standing and have no cognizable interest in Duncan Park.  And, even if Plaintiffs could pursue their claims, those claims would fail under applicable laws governing deeds and trust instruments.  Hence, Plaintiffs' claims must be dismissed as a matter of law.

## II.    STATEMENT OF THE UNDISPUTED FACTS

This case ultimately arises from the tragic death of an 11 year-old boy, Chance Nash, due to a sledding accident in Duncan Park in 2009. The historical context of this lawsuit is instructive. It arises from litigation filed and "aggressively prosecuted" by Attorney Tallman in Michigan's circuit, probate, and appellate courts, originally stemming from the accident (collectively, the "*Nash* litigation"). *See Nash v. Duncan Park Comm'n et al.*, Nos. 331651, 331840, 331869 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *lv app. den'd*, 501 Mich. 953, 904 N.W.2d 864 (2018). This case is the latest filing and is based on events that unfolded

---

[1] Prior to being contacted by Attorney Tallman in approximately January 2019, Jeffrey Lapinske and Jerold Lapinske had never heard of Duncan Park, were not aware of the Trust Deed, had never heard of Robert or Martha Duncan, had never been to the City of Grand Haven, and had no knowledge of these claims. (**Exhibit 1**, Jerold Lapinske Dep. Tr. 9:13-24,10:1-3, 12:17-19, 13:4-23, 18:16-18; **Exhibit 2**, Jeffrey Lapinske Dep. Tr. 16:14-16, 17:17-24, 18:1-5, 18:16-23, 23:22-24, 24:1-14, 37:4-6). Jeffrey Lapinske testified that he believed the citizens of Grand Haven own Duncan Park. (Ex. 2 at 25:20-23; 26:7-8.) Neither Jeffrey Lapinske nor Jerold Lapinske are aware of any time when Duncan Park has not been open to the public since 1913. (Ex. 2 at 31:12-15; Ex. 1 at 18:22-24; 19:1-4.)

over the course of the *Nash* litigation. The City of Grand Haven (the "City") has, at all times, acted in good faith in defending the *Nash* litigation and taking extraordinary measures to comply with the courts' orders.

### A.  The Establishment of Duncan Park

Duncan Park consists of approximately 40 acres of unspoiled virgin forest located in the heart of the City. (**Exhibit 3**, Declaration of Patrick McGinnis at ¶ 7.) Duncan Park is, and since 1913 has been, open to the public and used year-round by the citizens of Grand Haven and its visitors for hiking, walking, picnicking, recreation, and natural enjoyment. (Ex. 3, ¶ 8-9.) Duncan Park is, and since 1913 has been, open to the public and used exclusively for park purposes. *(Id.)* The City has always acted in good faith in carrying out the intent and purposes of Duncan Park's benefactor, Mrs. Martha H. Duncan ("Mrs. Duncan"). (*Id.* at ¶ 10; *see also* **Exhibit 4**, McGinnis Dep. Tr. at 13:15-21; 34:1-15; 26:2-17.)

The Michigan Court of Appeals' decision in *Nash v. Duncan Park Commission*, 304 Mich. App. 599, 848 N.W.2d 435 (Mich. Ct. App. 2014), *vacated in part, denied in part*, 497 Mich. 1016, 862 N.W.2d 417 (2015), summarizes the relevant facts pertaining to Duncan Park's establishment:

> The land comprising Duncan Park was originally owned by Martha and Robert Duncan. Martha Duncan inherited the land as her sole property after Robert's death. On October 22, 1913, Mrs. Duncan executed a trust deed[2] naming herself as the "Party of the First Part" and identifying as the "Parties of the Second Part" three individuals who would serve as "Trustees for and in behalf of the people of the city of Grand Haven."
>
> * * *

---

[2] **Exhibit 5**, hereinafter the "Trust Deed."

On October 20, 1913, the [City] enacted an ordinance[3] creating "The Duncan Park Commission," consisting of the three trustees.

\* \* \*

In 1994, the [City's] liability insurance carrier communicated to the mayor that "since the City and its residents were using the park, we could cover it for property and liability purposes." The insurance company declined to extend coverage to the Commission, however, without "some type of agreement." The [City] manager proposed that the [City] and the Commission enter into a "license agreement," which would require the [City] to provide general liability insurance coverage for the Commission and the park "in return for use of the park." "[A]s a housekeeping matter," the [City] manager asked the [City] council to readopt the 1913 ordinance.[4]

*Nash*, 304 Mich. App. at 604–08.

The Trust Deed contains several unique provisions. The "First" section following the grant provides that the premises shall be accepted by the Common Council of the City and provides for "prompt appointment by the mayor of a successor of any Trustee" of the Duncan Park Commission. (Ex. 5 at 2-3.) The "Second" section requires Grand Haven to create a Duncan Park Commission to manage and maintain the park without pay. (*Id.* at 3.) The "Third" section provides that Duncan Park "shall always be held and occupied by the grantees for and in behalf of the Citizens of the [City] as a public park, for the use and enjoyment of the citizens or inhabitants of Grand Haven, and for no other purpose." (*Id.* at 3) The "Third" section further provides that:

> … this gift and grant hereby made is subject to the express limitations and is on the express conditions that such parcel of land shall always be held and used as a public park as aforesaid, ___**and**___ shall always be called, known and designated as "<u>DUNCAN PARK</u>," ___**and**___ should said parcel of land cease to be so held and used as a public park, ___**and**___ in case the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and conditions herein specified, ___**then**___ the premises so dedicated as

---

[3] **Exhibit 6**, hereinafter the "1913 Ordinance."
[4] **Exhibit 7**, the "1994 Ordinance."

3

> above, with all improvements, shall revert to the first party herein, her heirs, executors or assigns and become again vested in her, or her heirs, as fully as if such dedication had never been made; and she, her heirs, or executors, may then enter upon and take possession of said premises and thenceforward hold the same as fully as if this dedication had never been made.

(*Id*. at 3-4 (emphasis added).). Plaintiffs have not alleged that Duncan Park has ever ceased to be used as a public park, nor have they alleged that it has ever been called or designated as anything other than Duncan Park.

The "Fourth" section prohibits liquor in Duncan Park. (*Id*. at 4.) The "Fifth" section provides that the City shall provide care and improvement to the park. (*Id*.) Further, the "Fifth" section states that "it is the desire and intention of the Grantor that the natural beauty of the forest within said park shall be preserved as far as possible and that none of the native timber now growing therein shall be removed, except when laying out of drives or walks or any other desirable improvement shall render the removal thereof necessary." (*Id*.) The "Sixth" section provides for nonpayment of taxes by Grantor. (*Id*. at 5.) The "Seventh" section provides that the Duncan Park Commission trustees shall elect officers, and they and their successors shall have "exclusive supervision, management, and control" of Duncan Park. (*Id*.) The "Seventh" section further provides that a successor should be selected by the Commission trustees and appointed by the Mayor, and must be residents of the City. (*Id*.)

The "Eighth" section of the Trust Deed provides that the Trust Deed:

> … is given on the express condition that the . . . City of Grand Haven shall, on the acceptance [of the Trust Deed], pass an ordinance satisfactory to the Grantor, creating a "DUNCAN PARK COMMISSION" as herein provided, and providing for its perpetuation in the manner herein specified; also providing for the care and maintenance of said DUNCAN PARK. The repeal of said Ordinance, or any part thereof, at any future time, shall render this Deed null and void and makes the same of no effect.

(*Id*. at 5-6.)

4

The final, "Ninth" section of the Trust Deed provides that if the Duncan Park Commission:

> … shall cease to exist, the Circuit Court for the County of Ottawa in Chancery, or such Court as shall succeed the same, shall, on the application of any Citizen of the City of Grand Haven, take charge of this trust and appoint a suitable "DUNCAN PARK COMMISSION" to fulfill and carry out the terms of the trust for the benefit of the Citizens of the City of Grand Haven; and the Commission so appointed shall thereafter choose its own successors in the same manner as herein provided.

(*Id.*)

Plaintiffs' claims relate to Sections "Third" and "Eighth" of the Trust Deed.

### B. Duncan Park is Comprised of Two Parcels – Only One of Which Is At Issue

On July 30, 1918, Mrs. Duncan made and delivered a quit-claim deed to the City for an additional parcel adjoining the original Duncan Park (**Exhibit 8**, "1918 Deed"). As a result, today Duncan Park consists of two parcels: the larger tract conveyed by the Trust Deed, and a smaller tract ("City Parcel") conveyed by the 1918 Deed. This City Parcel is owned in fee simple by the City and the terms of the Trust Deed do not apply to it.

### C. Procedural History of Nash Litigation and Related City Ordinances

In December 2009, Chance Nash, an 11 year-old boy, tragically died in a sledding accident in Duncan Park. *See, supra, Nash v. Duncan Park Comm'n et al.*, Nos. 331651, 331840, 331869 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *lv app. den'd*, 501 Mich. 953, 904 N.W.2d 864 (2018). Plaintiffs' counsel, Attorney Tallman, representing the Estate of Chance Nash, filed suit against the Duncan Park Commission in Ottawa County Circuit Court asserting failure to maintain and failure to warn claims. (*Id.* at *2.) The Circuit Court granted summary disposition in favor of the Duncan Park Commission, finding that the Duncan Park Commission

was a political subdivision entitled to governmental immunity under the Michigan Governmental Immunity Act, M.C.L. § 691.1401 *et seq*. (*Id.*)

In April 2012, Attorney Tallman filed a second suit in the Ottawa County Circuit Court against the Duncan Park Trust and its three individual trustees, alleging negligence and gross negligence. *Nash,* 848 N.W.2d at 441-42. The Circuit Court, in granting summary judgment to the defendants in that case, held that Duncan Park was a "gift" from Mrs. Duncan, and as the grantee of the gift, the City held "fee title to the fee" and that there was no Duncan Park trust, and thus no trustees. (*Id.*) Therefore, the court held, the Duncan Park commissioners were shielded from suit with immunity. (*Id*. at 443.)

In light of the litigation involving Duncan Park and fear of potential personal exposure, the Duncan Park Trustees resigned their positions and/or were otherwise unable to govern as a result of disagreements between remaining trustees as of at least March 2013. (*See* **Exhibit 9**, Declaration of Scott G. Smith at ¶ 4; **Exhibit 10**, Petition for Appointment ("Tallman Petition") at ¶¶8-16.)

In response to the Circuit Court's ruling and the inability of the then-current Duncan Park Commission to govern Duncan Park in the midst of pending litigation, the City enacted Ordinance No. 13-10 on March 4, 2013 (Ex. 9, ¶ 5; "2013 Ordinance," **Exhibit 11**). The 2013 Ordinance repealed two sections of the 1994 Ordinance, namely Section 25-66 governing the filling of vacancies in the Duncan Park Commission and Section 25-67 governing selection by lots. (Ex. 9, ¶ 6-7; Ex. 11.) The remaining sections of the 1994 Ordinance were amended by the 2013 Ordinance and were not repealed. (Ex. 11.) The amendments included, *inter alia*:

- Establishing a mechanism by which the Mayor of the City would initially appoint five, rather than three, park commissioners for staggered five-year terms with vacancies to be filled by appointment by the Mayor subject to City Council approval; and

- Permitting the City Council to remove commissioners for misfeasance, malfeasance or nonfeasance in office.

The City enacted the 2013 Ordinance[5] in accordance with the Court's determinations in the *Nash* litigation out of necessity and in good faith in order to achieve the purpose set forth in the Trust Deed. (Ex. 9, ¶ 8.).[6]  The City specifically wanted to ensure that Mrs. Duncan's intent to provide a public park with independent oversight for the perpetual benefit of the people of Grand Haven would be maintained and enhanced despite the Court's ruling in *Nash*. (Ex. 9, ¶ 9.)

On March 20, 2014, the Michigan Court of Appeals overturned the 2012 Ottawa County Circuit Court's holding regarding ownership of Duncan Park and the immunity afforded to the Duncan Park commissioners. In its opinion, the Michigan Court of Appeals addressed "the bedrock question: who owns Duncan Park?" and concluded that the 1913 Trust Deed "did, in fact, create a trust, and that the trust holds fee simple title to [Duncan Park]." *Nash*, 304 Mich.

---

[5] The 2013 Ordinance was later amended by Ordinance No. 14-04, enacted October 20, 2014, to repeal Section 25-64 of the 2013 Ordinance regarding funding. (*See* **Exhibit 12**, "2014 Ordinance".)

[6] As the City explained in the 2015 Petition for Reformation of the Duncan Park Trust filed in and granted by the Ottawa County Probate Court, a copy of which is attached as **Exhibit 13**, the 2013 Ordinance and subsequent actions were required because: (1) "members of the governing body of Duncan Park may risk personal liability due to the Court of Appeals' determination that the body is not entitled to governmental immunity"; (2) "Duncan Park has traditionally received financial support from organizations, such as The Grand Haven Community Foundation, that may provide funding only to governmental and charitable entities. As currently structured, the Duncan Park Commission may not qualify"; and (3) the 1913 Trust Deed requirements did not comply with or reflect modern laws applicable to "governing bodies that oversee public property," including the reality that a "three-member governing body [could lead to] gridlock" and the related inability to "fill its own vacancies if one member is unable to vote and the other two members do not agree." Ex. 13, at p. 4.

App. at 613, 848 N.W.2d at 443 (2014). Therefore, "the trustees own the land." 848 N.W.2d at 448-449. The Michigan Court of Appeals' analysis on this point is adopted herein. 848 N.W.2d at 443-451. This particular holding has not been overturned or amended by subsequent decisions.

Following the determination that the Park was held in trust, the Estate of Chance Aaron Nash (sometimes referred to as the "Nash Estate") and its attorney, John D. Tallman "as a creditor of an interested party in the Duncan Park Trust" petitioned the Ottawa County Probate Court in December 2015 to enter an order appointing a Successor Trustee, reasoning that "[a]lthough a new Duncan Park Commission was formed by the City [through the 2013 Ordinance] . . . and new Commissioners were appointed, no new trustees were appointed as provided by the trust instrument." (*See* Ex. 10, at p. 1.) The Tallman Petition specifically represented:

- "Under the applicable provisions of the Michigan Trust Code, MCL 700.7203 . . . [the Ottawa County Probate Court] has the exclusive jurisdiction to appoint a successor trustee(s)." (*Id.* at p. 2.)

- "Petitioner is not aware of any specific individual that is a resident of Grand Haven who would be willing and capable of acting as successor trustee in this case." (*Id.*)

- "Petitioner believes that it is in the best interests of the Trust for this Court to appoint a successor trustee." (*Id.*)

The City thereafter filed its own petition with the Ottawa County Probate Court, asking the court to appoint the City as the sole trustee for Duncan Park by reformation of the Trust Deed in accordance with M.C.L. § 700.7412 (Ex. 13, p. 5). The Ottawa County Probate Court issued an opinion in January 2016 ruling on both petitions (**Exhibit 14**, "Ottawa County Probate Court Opinion and Order"). The court denied the Nash Estate's petition for the appointment of a

successor trustee because it "failed to find anyone who is willing to serve as successor trustee," noting that "it would be poor practice to prolong the present arrangement in which three private individuals manage one part of the Park, i.e., that portion of the Park described in the 1913 deed, while the City manages the remainder of the Park, i.e., that portion of the Park described in the 1918 deed. No court of equity should give its blessing to such an arrangement." (*Id*. at 3.) "Although the probate court technically 'denied' plaintiff's request for an appointment of a successor trustee, plaintiff received the relief requested when, in fact, the probate court appointed the City as the successor." *Nash*, 2017 WL 3441404, at *10.

The court granted the City's petition to reform the Duncan Park Trust, following a determination that "continuation of the Duncan Park Trust on its current terms would be highly impractical for several reasons." (*Id*. at *3-4.) An Order was entered on February 29, 2016, and recorded in the Ottawa County records as Instrument 15-62257-TV, reforming the Duncan Park Trust, appointing the City as the sole trustee of the Duncan Park Trust and ordering amendment of its related ordinance. (*See* Ex. 14.) The City adopted Ordinance No. 16-01 on April 25, 2016 (**Exhibit 15**, the "2016 Ordinance") in accordance with the Ottawa County Probate Court order. That ordinance governs Duncan Park today.

The Nash Estate appealed the probate court's opinion and order, among other opinions. The Court of Appeals affirmed the probate court's opinion and order, holding that "the lack of successor trustees, on its own, served as a basis for the probate court's conclusion that the trust terms had become impracticable and, therefore, subject to modification," and that "plaintiff lacks any interest in the management of the trust such that its objections to both the modification and appointment should be ignored." *Nash*, 2017 WL 3441404, at *11-12. The court permitted the City to tax costs in that litigation. (*Id*.) The Michigan Supreme Court denied plaintiffs'

application for leave to appeal in January 2018. 501 Mich. 953, 904 N.W.2d 864 (Mich. 2018). Thus, the City has gone to extraordinary lengths to honor Mrs. Duncan's wishes despite Plaintiffs' counsel's efforts to the contrary. (Ex. 9, ¶ 10.)

### D.  Mrs. Duncan Died Leaving A Will

Mrs. Duncan died on August 5, 1918, leaving a will. (**Exhibit 16,** at p. 6). On September 16, 1918, the Ottawa County Probate Court entered an order admitting her will to probate. (*Id.*). Mrs. Duncan's will made certain devises, authorized disposal of certain assets, and contained the following residue clause:

> I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, of which I shall die seized or possessed, or to which I shall be entitled at my decease, and wherever the same may be situated, unto the Michigan Trust Company, a corporation organized and existing under the laws of the State of Michigan, of Grand Rapids, Michigan, IN TRUST, forever, for the following purposes . . .

(Ex. 16, p. 3.)

The purposes enumerated for her residuary estate include "one-tenth to the Park Board of the City for the improvement of [ ] the general park system of the City, except Duncan Park; . . . and the remaining six-tenths to the Duncan Park Commission to be used for improvement or maintenance of Duncan Park and for that purpose only." *(Id.)*

### E.  Plaintiffs' Claims

Plaintiffs' claims arise under Sections "Third" and "Eighth" of the Trust Deed.  They allege to be heirs of Mrs. Martha H. Duncan,[7] and seek to gain title to Duncan Park for private

---

[7] Attorney Tallman proactively searched for plaintiffs to support these claims. In his own words: "I just wanted to reiterate for the record that, prior to the deposition, when this was being scheduled, I informed defense counsel that my clients didn't know anything about any facts in dispute in this matter except what I've told them. And so with that understanding, we are going forward with the deposition." (Ex. 2, Jeffrey Lapinske Dep. Tr. 4:10-19.)

gain. (PageID.34.) Count I of Plaintiffs' First Amended Complaint ("Complaint") is a quiet title claim that, if successful, would make Plaintiffs the owners of the Duncan Park property based on a reverter clause in Mrs. Duncan's Trust Deed. (PageId.34-35.)  Plaintiffs claim reverter rights as to all of Duncan Park – including the second parcel – based on Mrs. Duncan's will, even though Mrs. Duncan deeded that property to the City prior to her death and the City holds fee simple title to that portion of the park. (PageID.31-32, ¶¶ 15-16 at 3-4). Plaintiffs' claim is based on their assertion that the 2013 Ordinance triggered the reverter clause and the "null and void" clause in the Trust Deed. (*Id.* at ¶ 30.)

Count II of the Complaint asserts a claim under 42 U.S.C. § 1983 by alleging that the City violated Plaintiffs' constitutionally protected rights by "taking the land known as Duncan Park for public use without just compensation." (*Id.* at ¶ 41.) The alleged unlawful taking is based on two periods: (i) from the date of the 2013 Ordinance to the 2016 Probate Court Opinion; and (ii) from the 2016 Probate Court Opinion to the present. (*Id.* at ¶¶ 38-39.) Similarly, Count III of the Complaint alleges an unlawful taking under Article X, § 2 of the Michigan Constitution. (*Id.* at ¶¶ 43-45.)

Lastly, Count IV of the Complaint alleges an additional violation of 42. U.S.C. § 1983 based on an alleged failure to receive notice and an opportunity to be heard. (*Id*. at ¶¶ 46-49.)

### III.   ARGUMENT

Plaintiffs cannot establish any right to the Duncan Park property, a public park that has been held in charitable trust for the citizens and visitors of the City for over 100 years. First, Plaintiffs' claims do not apply to the City Parcel. Second, Plaintiffs are not the real parties in interest to prosecute their claims. Third, Michigan's Estates and Protected Individuals Code ("EPIC") precludes Plaintiffs' claims. Fourth, the terms of the Trust Deed and the will preclude Plaintiffs' claims. And, fifth, Plaintiffs' federal law claims are without merit.

### A. Summary Judgment Standard and Application of Michigan Law.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S.Ct. 2505; 91 L.Ed. 2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." (*Id.* at 252.) In deciding a motion for summary judgment, the court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when " 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party'." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986)).

In construing the state law claims in this case, this Court should apply the laws of the State of Michigan. *See*, *e.g.*, *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 845 (W.D. Mich. 2012).[8]

---

[8] "As a federal district court, this Court is bound by the decisions of Michigan's intermediate appellate courts unless it is convinced that the Michigan Supreme Court would decide the question differently." *Millner v. DTE Energy Co.,* 285 F. Supp. 2d 950, 964 (E.D. Mich. 2003) (*citing Comiskey v. Automotive Industry Action Group,* 40 F.Supp.2d 877, 891 (E.D.Mich.1999) (*quoting United of Omaha Life Ins. Co. v. Rex Roto Corp.,* 126 F.3d 785, 789 (6th Cir.1997)). Because this Motion pertains to matters of state law, " 'the Court must apply state law as determined by the state's highest court.' " *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If a state's highest court has not spoken to an issue, the Court must determine state law based on 'all relevant data,' including decisions of intermediate state courts, decisions of federal courts interpreting state law, case precedents from other states, and scholarly commentary. *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (citing cases). In this process, intermediate state court decisions are especially important unless the other data suggest that the state's highest court would not follow such decisions. *Id.*" *Phillips v. Ingham Cty.,* 371 F. Supp. 2d 918, 929 (W.D. Mich. 2005).

**B.  None of Plaintiffs' Claims Apply to the City Parcel.**

There are two parcels of property involved in this matter.  Because the Defendant was conveyed unconditional fee simple title to the "City Parcel" – the smaller of the two parcels comprising Duncan Park – Defendant owns the "City Parcel" free of the terms and conditions of the Trust Deed.  (*See* Ex. 8, 1918 Deed.) Conditions in respect of the City Parcel included in Mrs. Duncan's Trust Deed are of no effect, since subsequent to the execution of the Trust Deed and subsequent to issuance of her will, Mrs. Duncan elected to convey the property to the City without condition.  Therefore, Plaintiffs cannot assert any property right to this portion of Duncan Park.

**C.  Because Plaintiffs Are Not Real Parties in Interest, They Are Not Entitled To Relief.**

Plaintiffs are not the real parties in interest. Instead, this action should have been brought, if by anyone, by the trustee of Mrs. Duncan's Estate. Under Fed. R. Civ. P. 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest," which in Michigan is the party "who is vested with the right of action on a given claim," *Weston v. Dowty*, 163 Mich. App. 238, 242; 414 N.W.2d 165 (1987). The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief. *Certain Interested Underwriters at Lloyd's*, *London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994); *see also Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984); *American Nat'l Bank & Trust Co. v. Weyerhaeuser Co.,* 692 F.2d 455, 459-60 (7th Cir. 1982).

If Mrs. Duncan had died intestate in whole or in part, her "heirs and descendants,"[9] as real parties in interest, might have succeeded to (i) the possibility of reverter contained in Section

---

[9] It is not clear that any one or more of the Plaintiffs is an "heir or descendant" of Mrs. Duncan.

"Third" of the Trust Deed, or to (ii) the Duncan Park property itself if the Trust Deed were in fact "null and void" as provided in the Section "Eighth" of the Trust Deed.[10]   Under that circumstance, they may be entitled to assert claims.  But, **Mrs. Duncan did not die intestate**. "Where a provision of a will is fairly open to more than one construction, a construction resulting in intestacy, either in whole or in part, will not be adopted if by any reasonable construction it can be avoided." *In re Rood's Estate*, 41 Mich. App. 405, 422-423; 200 N.W.2d 728 (1972).  Indeed, there is a presumption against intestacy where there exists a valid will, and where the residuary clause is under construction, the presumption against intestacy becomes especially significant. (*Id.*)

Pursuant to M.C.L. § 554.61, the possibility of reverter that is contained within the trust deed in question created a terminable interest in Duncan Park. *See* M.C.L. § 554.61(a) (defining a terminable interest as "a possessory or ownership interest in real property which is subject to termination by a provision in a conveyance or other instrument which either creates a **right of reversion to a grantor or his heirs, successors or assigns** or creates a right of entry on the occurrence of a specified contingency.") (emphasis added). Such a terminable interest is a "future interest that **remains in the grantor**." *Ditmore v. Michalik*, 244 Mich. App. 569, 580; 625 N.W.2d 462 (2001); *see also* 28 Am. Jur. 2d Estates § 189 ("A possibility of reverter is a

---

If Plaintiffs are heirs or descendants of Mrs. Duncan, there are other living individuals with the same degree of relationship to her who would be similarly bound by the outcome of this case. The City briefed this issue more fully in its *Brief in Opposition to Plaintiffs' Motion for Joinder of Additional Heirs*, PageID.418-540, which is incorporated herein by reference.

[10] The first part of Section "Eighth" creates a fee simple subject to condition precedent. It is not clear what the legal effect is of the second sentence of Section "Eighth"; it creates a conditional estate of some kind.  Both leave Mrs. Duncan with a possibility of reverter.  As described herein, a possibility of reverter is an expectant estate that constitutes an interest in real property. John G. Cameron, Jr., Michigan Real Property Law: Principles and Commentary, Vol. 1, §7.9, p. 269 (1st Ed. 1984; 2nd Ed. 1993; 3rd Ed. 2005).

**future interest in the grantor** that follows the conveyance of a fee simple determinable.")
(emphasis added).

Upon the breach of a condition in a fee simple determinable containing a possibility of
reverter, the interest in the underlying land automatically reverts to the grantor or the grantor's
successors or assigns. *Ditmore*, 244 Mich. at 580. In this case, the exact language of the deed
indicates that upon the triggering of the condition in the reverter clause, the premises "shall
revert to the **first party herein**, her heirs, executors or assigns . . . **as if such dedication had
never been made**…" (Ex. 10, at p. 4.) (emphasis added). Importantly, as evidenced by the
aforementioned case law and the language of the Trust Deed itself, the party entitled to the
reversionary interest in the land is the *grantor*. If the grantor has died, as Mrs. Duncan did in
1918, the reversionary interest (along with any other property of the grantor) properly belongs to
the grantor's heirs *or* devisees depending on whether the grantor died intestate or testate.

Under the Michigan Estates and Protected Individuals Code ("EPIC"), an "heir" is
defined as ". . . a person, including the surviving spouse or the state, that is entitled under the
statutes of **intestate succession** to a decedent's property." M.C.L. § 700.1104(p); *see also*
M.C.L. § 700.2720 (stating that if a governing instrument creates a future interest in the
decedent's heirs, the property passes via applicable intestate succession law). Importantly,
notwithstanding that a decedent dies with heirs, as determined by statute, a decedent's property
only passes by intestate succession if the decedent did not leave a valid will designating devisees,
which may contrast with a grantor's statutory heirs. M.C.L. § 700.1103(m); § 700.1108(b);
M.C.L. § 700.2101(1).

In this case, Mrs. Duncan left a comprehensive will: all of her property was left to either
specific devisees or to the Michigan Trust Company in trust. The will contained a residue clause

15

that provided who would take the remainder of her estate, disposing of all property that was not specifically demised:

> I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, of which I shall die seized or possessed, or to which I shall be entitled at my decease, and wherever the same may be situated, unto the Michigan Trust Company, a corporation organized and existing under the laws of the State of Michigan, of Grand Rapids, Michigan, IN TRUST . . .

(Ex. 16, at p. 3.) The residuary provisions of her will, to be administrated by the Michigan Trust Company and its successors,[11] include grants to the "general park system of the [City]," and specifically to Duncan Park. (*Id*.) Neither Plaintiffs nor their ancestors are mentioned anywhere in Mrs. Duncan's will. (*Id*.)  As such, the reversionary interest in Duncan Park could not, in any event, pass to the decedent's "heirs" because she died testate, and her will did not leave the residue of her estate to her heirs for purposes of intestate succession.

Under Michigan law, wills are to be interpreted as contracts, where the court "restrict[s] its analysis to the language of the will [and] engages in an inquiry to determine the legal effect of the words used." *In re Estate of Bem*, 247 Mich. App. 427, 433; 637 N.W.2d 506 (2001). "The primary goal of the Court in construing a will is to effectuate, to the extent consistent with the law, the intent of the testator." *In re Edgar Estate*, 425 Mich. 364, 378; 389 N.W.2d 696 (1986). "The testator's intent is to be determined from the four corners of the will." *In re Jauw*, No. 305902, 2012 WL 4039277, at *3 (Mich. Ct. App. Sept. 13, 2012), *citing In re Howlett's Estate*, 275 Mich. 596, 600–601; 267 N.W. 743 (1936). If the plain language of the will is unambiguous, "the Court is to enforce the will as written." (*Id*. at *3, *citing In re Estate of Raymond*, 483 Mich. 48, 52; 764 N.W.2d 1 (2009).)

---

[11] Old Kent Bank and Trust Company was the successor to the Michigan Trust Company; Fifth Third bank is the successor to Old Kent Bank.

Mrs. Duncan was quite clear in both the deeds and her will that her property was to be held in charitable trust. Under the terms of her will, whatever rights may exist as a result of Sections "Third" and "Eighth" of the Trust Deed passed to the Michigan Trust Company as her trustee. Plaintiffs are not real parties in interest to this matter. Fifth Third Bank, as successor to Old Kent Bank and Trust Company (successor to the Michigan Trust Company), is the only "real party in interest" that would be able to assert a claim under the Trust Deed.

### D. Plaintiffs Have No Standing Under Michigan's EPIC, Specifically M.C.L. § 700.7413(3), to Pursue These Claims.

Under EPIC, Plaintiffs are not entitled to assert any claim to the Duncan Park property because no "heir" of Mrs. Duncan, however defined, has standing to challenge the validity of Mrs. Duncan's charitable trust[12] as modified by the Ottawa County Probate Court. *See, e.g., Modena v. Fed. Home Loan Mortg. Corp.*, No. 1:08-cv-887, 2009 WL 799072, at *1 (W.D. Mich. March 23, 2009) (where plaintiff failed to establish any legal interest in the property, trial court properly concluded that plaintiff lacked standing to challenge the repossession of property). EPIC's cy pres statute, M.C.L. § 700.7413(3), governs this Court's analysis of the fate of the charitable trust in question. It provides:

> (1)      Except as otherwise provided in subsections (2) or (3), if a particular charitable purpose becomes unlawful, impracticable, or impossible to achieve, no alternative taker is named or provided for, and the court finds the settlor had a general, rather than a specific, charitable intent, all of the following apply:

---

[12] In prior lawsuits pursued by Attorney Tallman relating to Duncan Park, the Michigan Court of Appeals repeatedly held that Duncan Park was established as a charitable trust through "common-law dedication of the land for use as a park, which required acceptance by the [C]ity." *Nash v. Duncan Park Commission*, 304 Mich. App. 599, 628; 848 N.W.2d 435 (2014), *vacated in part, lv appeal denied*, 497 Mich. 1016 (2015). "Formal acceptance of the dedication was accomplished through the enactment of the ordinance required pursuant to the trust deed." *(Id.)* Thus, the "park was created through a charitable trust for the benefit of Grand Haven and its people." *Nash v. Grand Haven*, 321 Mich. App. 587, 599; 909 N.W.2d 862 (2017), *lv app denied*, 503 Mich. 870; 917 N.W.2d 404 (2018).

       (a)     The trust does not fail, in whole or in part.

       (b)     The trust property does not revert to the settlor or the settlor's successors in interest.

       (c)     The court may apply cy pres to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's general charitable intent.

(2)     If the terms of a charitable trust confer a power on the trustee, or another person designated in the trust or gift, to modify or terminate either the charitable trust, a charitable gift to the trust, or the charitable purpose of the trust or gift in favor of another charitable trust, gift, or purpose, the terms of the trust prevail over the power of the court to apply cy pres to modify or terminate the trust.

**(3)     A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of the court to apply cy pres to modify or terminate the trust <u>only if</u>, when the provision takes effect, either of the following applies:**

       **(a)     The trust property is to revert to the settlor and the settlor is still living.**

       **(b)     Less than 50 years have elapsed since the date of the trust's creation.**

M.C.L. § 700.7413(3) (emphasis added).

Plaintiffs cannot meet either prong of M.C.L. § 700.7413(3). The settlor, Mrs. Duncan, died in 1918. She created her trust in 1913 – well over 50 years ago. Thus, Plaintiffs' claims fail as a matter of law. *(Id.)*

     **E.  This Court Must Also Reject The Substance of Plaintiff's Claims.**

For all of the foregoing reasons, the court should not find it necessary to examine the substance of the Plaintiffs' claims, but if it does, it will, as it must on the undisputed facts, conclude that the reverter clause was not triggered and that the Trust Deed is not "null and void."

**1. No Event Has Occurred that Would Trigger the Reverter Clause in Section Three of the Trust Deed.**

Michigan courts have "made clear that the plaintiff in a quiet-title action has the initial burden of establishing a *prima facie* case of title," and that summary judgment in favor of the defendant "is properly entered if the plaintiff fails to carry this burden . . . ." *Special Property VI LLC v. Woodruff*, 273 Mich. App. 586, 590; 730 N.W.2d 753 (2007) (citations omitted). Here, Plaintiffs cannot prevail on their claim to enforce the reverter clause in Mrs. Duncan's Trust Deed because that clause has never been triggered.

Under Michigan law, it is the "court's obligation to determine the intent of an instrument by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich. 19, 24; 745 N.W.2d 754 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." (*Id.*). Further, to enforce contracts by their terms, "courts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 468; 663 N.W.2d 447 (2003).

In this case, Section "Third" of the Trust Deed sets forth a multi-part requirement for the trustee of Mrs. Duncan's estate to enforce any possibility of reverter:

> … this gift and grant hereby made is subject to the express limitations and is on the express conditions that [1] such parcel of land shall always be held and used as a public park as aforesaid, ***and*** [2] shall always be called, known and designated as DUNCAN PARK, ***and*** [3] should said parcel of land cease to be so held and used as a public park, ***and*** [4] in case the Council or said Trustees shall be neglect or refuse to carry out in good faith all of the terms and conditions herein specified, ***th[e]n*** the premises so dedicated as above, with all improvements, shall revert to the first party herein, her heirs, executors or assigns and become vested in her, or her heirs, as fully as if such dedication had never been made, and she, her heirs, or executors, may then enter upon and

19

> take possession of said premises and thenceforward hold the same
> as fully as if this dedication had never been made ….

Ex. 5, at p. 3-4 (emphasis and numbered paragraphs added).

[1, 3] Duncan Park is held and used as a public park and has, to the best of the City's knowledge, been so used continuously since 1913. (Ex. 3.) [2] Duncan Park is and has, to the best of the City's knowledge, always been called, known, and designated as Duncan Park. (Ex. 3.) [4] The Duncan Park Commission and the City, as Trustee of the Duncan Park Trust, have always carried out the terms and conditions in the Trust Deed in good faith within the bounds of applicable law. Because the reverter clause requires that Duncan Park must have ceased to operate as a public park in order to apply, and because it has always been operated as a park, **and** because the reverter clause is conditioned upon the City and Trustees having neglected their duties, which has never happened, this clause was never triggered.  Rather, as exhibited through the Ordinances in 1994, 2013, 2014, and 2016, the Petition to Reform the Trust in 2015, and its burdensome and earnest defense of the *Nash* litigation, the City has worked tirelessly to honor Mrs. Duncan's intentions and preserve Duncan Park for the public.

The only way Plaintiffs could evade the express terms of the Trust Deed would be to ask the Court to rewrite the reverter clause to state "or" instead of "and" – which Michigan law forbids, as this would render an indispensable part of the contract "surplusage or nugatory." *Klapp*, 468 Mich. at 468. Accordingly, Plaintiffs' claims to enforce the reverter clause fail as a matter of law and Plaintiffs cannot establish any vested property right to any portion of the land comprising Duncan Park.

## 2.  The Trust Deed Is Not "Null and Void."

Alternatively, Plaintiffs assert that the 2013 Ordinance amending the Duncan Park Commission rendered the trust "null and void" under Section Eight of the Trust Deed

(PageID.33-.34).[13] The adoption of the 2013 Ordinance did not trigger the "null and void" clause. Rather, it merely expanded the Mayor's ability to appoint commissioners in accordance with the intent of the original Trust Deed, which called for the "prompt appointment by the Mayor of a successor of any Trustee." (Ex. 5.)  Moreover, even if Plaintiffs were correct and the Trust Deed was voided in 2013, Plaintiffs cannot receive any property from the trust as a matter of law under EPIC. *See* M.C.L. § 700.1101 *et seq.*, and *Nash*, 848 N.W.2d at 446.

It would be impossible to determine that the Trust Deed was "null" or "void" as a result of the 2013 Ordinance when, upon 2015 petitions, the Ottawa County Probate Court reformed the trust by opinion and order in 2016 without objection. (*See* Ex. 14.) The Michigan Court of Appeals affirmed the probate court's reformation of the trust and the appointment of the City of Grand Haven as the sole trustee. *Nash*, 2017 WL 3441404, at *12. Specifically, the Michigan Court of Appeals held that the Probate Court did not err in determining that the trust terms had become impracticable, and thus modification of the trust was proper pursuant to M.C.L. § 700.7412(1).  (*Id*. at *11.)

The probate court could not have reformed a nullity. Therefore, Plaintiffs' claims cannot succeed under Section Eight of the Trust Deed.

### F.  Plaintiffs' Federal Law Claims Are Without Merit.

#### 1.  Plaintiffs Were Not Entitled to Notice of Any Actions In Respect of Duncan Park.

Plaintiffs' claim under 42 U.S.C. § 1983 (Complaint Count IV) is based on the alleged failure to receive "notice and an opportunity to be heard" during some unspecified period of time predating the alleged deprivation of "their interest in the land known as Duncan Park." (PageID.37 ¶ 49). To maintain a procedural due process claim pursuant to Section 1983,

---

[13] This argument directly conflicts with Plaintiffs' attempt to enforce the reverter clause, as that clause would also be invalidated under Plaintiffs' theory.

Plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

The Court should reject Plaintiffs' due process claim for at least two reasons:

(1)     First, as shown above, Plaintiffs do not now possess and have never possessed a vested right in any portion of the Duncan Park property and thus cannot meet the elements of a due process claim. *Hahn,* 190 F.3d at 716.

(2)     Second, under Michigan law (*i.e.* EPIC), Plaintiffs were not entitled to any notice prior to the Probate Court's proper reformation of the charitable trust. M.C.L. § 700.7412(4) states: "Notice of any proceeding to terminate or modify a trust shall be given in the manner described in section 7411(3)." M.C.L. § 700.7411(3), in turn, identifies parties entitled to notice, none of which were Plaintiffs:

> Notice of any proceeding to terminate or modify a trust must be given to the <u>settlor</u>, the settlor's representative if the petitioner has a reasonable basis to believe the settlor is an incapacitated individual, the <u>trust director</u>, if any, a powerholder described in subsection (1)(b) or (c), if any, the <u>trustee</u>, and <u>any other person named in the terms of the trust</u> to receive notice of such a proceeding.

(Emphasis added).[14]

---

[14] Plaintiffs' counsel, of course, had notice, since he filed a petition to reform the Trust, and actively participated in those proceedings.  Plaintiffs, therefore, had at least constructive notice in any event.

Because the Trust Deed by its terms does not name Plaintiffs as notice recipients and no other legal provision entitles them to notice, Plaintiffs had no right to notice of the City's petition to reform the charitable trust, and Count IV of Plaintiff's Complaint fails as a matter of law.

## 2.   There Was No "Taking" of a Vested Property Right.

In Counts II and III of the Complaint, Plaintiffs assert claims for an uncompensated taking of property (PageID.35-.37). For their Fifth Amendment claim (Count II), Plaintiffs must establish a property right to prove a taking. Similarly, for their inverse condemnation claim under Article X, Section 2 of the Michigan Constitution (Complaint Count III), Plaintiffs "must first establish that a vested property right is affected." *Attorney Gen. v. Michigan Pub. Serv. Comm'n*, 249 Mich. App. 424, 435-436; 642 N.W.2d 691 (2002). A vested property right is "something more than such a mere expectation . . . it must have become a title, legal or equitable, to the present or future enjoyment of property." (*Id.*) Without a property right, a plaintiff has no basis for alleging "a confiscatory taking without due process of law." (*Id.*)

With respect to the larger parcel subject to the Trust Deed provisions, the City did not encroach anybody's rights. Duncan Park itself is, as it has always been, a public park. As explained above, the 2013 Ordinance did not trigger the reverter clause, and the time for Mrs. Duncan or her alleged heirs to enforce any private rights to the charitable trust property lapsed long ago under M.C.L. § 700.7413(3).

Thus, Plaintiffs' claim for an uncompensated taking from March 2013 to February 2016 (PageID.35 ¶ 38) is meritless, as Plaintiffs had no vested property rights. *Attorney Gen.*, 249 Mich. App. at 435-436. Any claim relating to the period from February 2016 to present (PageID.36 ¶ 39) is equally without merit, because the Michigan Probate Court's modification of

the trust was duly authorized,[15] and in no sense could it be construed as an "affirmative action" by the City's falling outside the scope of its legitimate powers.

### IV.   CONCLUSION

For the reasons stated above, the City requests that the Court grant this motion, enter summary judgment dismissing Plaintiffs' claims with prejudice, and grant the City all other appropriate relief.

Respectfully submitted,

DICKINSON WRIGHT PLLC
Attorneys for City of Grand Haven

Dated: March 16, 2020                    By: /s/ *Christina K. McDonald*
                                         Geoffrey A. Fields (P41788)
                                         Christina K. McDonald (P73517)
                                         Rock A. Wood (P41181)
                                         200 Ottawa NW, Suite 1000
                                         Grand Rapids, Michigan 49503
                                         (616) 458-1300

---

[15] Under M.C.L. § 700.7412(1), a court "may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration." That is precisely what the Michigan Courts did as explained in the Probate Court ruling (Ex. 14, at p. 2).

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2020, the foregoing Defendant's Brief in Support of

Motion for Summary Judgment was served upon counsel of record via the ECF filing system.

*/s/ Christina K. McDonald* _____