UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LAPINSKE, *et al.,*

    Plaintiffs,

v

CITY OF GRAND HAVEN

    Defendants

and

DANA NESSEL, MICHIGAN ATTORNEY GENERAL, in her official capacity,

    Defendant-Intervenor.

NO. 1:19-CV-162

HON. ROBERT J. JONKER

HON. MAGISTRATE JUDGE RAY KENT

**ORAL ARGUMENT REQUESTED**

---

| | |
|---|---|
| John Douglas Tallman (P32312)<br>John D. Tallman PLC<br>Attorney for Plaintiffs<br>4020 E. Beltline Avenue NE, Ste 101<br>Grand Rapids, MI 49525<br>(616) 361-8850 | Geoffrey A. Fields (P41788)<br>Christina Kay McDonald (P73517)<br>Attorneys for Defendants<br>Dickinson Wright PLLC<br>200 Ottawa Ave NW Ste 1000<br>Grand Rapids, MI 49503<br>(616) 458-1300 |

Julia Dale (P63904)
James E. Long (P53251)
Assistant Attorneys General
Mich. Department of Attorney General
Attorney for Defendant - Intervenor
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632

/

**DEFENDANT - INTERVENOR'S MOTION FOR SUMMARY JUDGMENT**
**ORAL ARGUMENT REQUESTED**

Defendant Intervenor, Attorney General Dana Nessel, by Assistant Attorney General Julia Dale, files this motion for summary judgment under Fed. R. Civ. P. 56(a).

Defendant respectfully requests that this Court:

1. Grant the motion and dismiss Plaintiffs' claims with prejudice; and

2. Grant such other relief as this Court deems proper.

        Respectfully Submitted,

        Dana Nessel
        Attorney General

*/s/ Julia Dale*
James E. Long (P53251)
Julia Dale (P63904)
Assistant Attorneys General
Attorneys for Defendant - Intervenor
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
Longj@michigan.gov
dalej@michigan.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY LAPINSKE, *et al.*,

    Plaintiffs,

v

CITY OF GRAND HAVEN

    Defendants

and

DANA NESSEL, MICHIGAN ATTORNEY GENERAL, in her official capacity,

    Defendant-Intervenor.

NO. 1:19-CV-162

HON. ROBERT J. JONKER

HON. MAGISTRATE JUDGE RAY KENT

---

John Douglas Tallman (P32312)
John D. Tallman PLC
Attorney for Plaintiffs
4020 E. Beltline Avenue NE, Ste 101
Grand Rapids, MI 49525
(616) 361-8850

Geoffrey A. Fields (P41788)
Christina Kay McDonald (P73517)
Attorneys for Defendants
Dickinson Wright PLLC
200 Ottawa Ave NW Ste 1000
Grand Rapids, MI 49503
(616) 458-1300

Julia Dale (P63904)
James E. Long (P53251)
Assistant Attorneys General
Mich. Department of Attorney General
Attorneys for Defendant - Intervenor
Corporate Oversight Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7632

/

**<u>BRIEF IN SUPPORT OF</u>**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION

The multi-count complaint in this matter arises out of a trust created for charitable purposes in a 1913 trust deed, attached as **Exhibit A** (the "deed"), by Martha H. Duncan. For more than 100 years Duncan Memorial Park ("Duncan Park") has served the residents and visitors of Grand Haven, Michigan while also honoring her late husband Robert Duncan as was Mrs. Duncan's intention. Almost 40 acres of land originally purchased by Mr. Duncan constitutes what is commonly known in the community of Grand Haven as "Duncan Park." The present action is an attempt to not only set aside a charitable trust on behalf of heirs who have no property interest in Duncan Park but to also overturn multiple decisions of the Michigan courts.

In 1851, Mr. Duncan established a law office in Grand Haven.[1] He "was elected to the board of supervisors in 1856, became the prosecuting attorney for Ottawa County in 1867, and served as Grand Haven's second mayor from 1868-1969."[2] In addition to providing legal services, and a steadfast commitment to city development, Mr. Duncan also sought to preserve a portion of the surrounding forest land from the lumber industry; purchasing 50 acres of virgin forest.[3] On October 22, 1913, Mrs. Duncan deeded almost 40 of the 50 acres to the people of Grand Haven in honor of her husband to be used as a public park. On July 27, 1918, Mrs. Duncan then executed a quit claim deed directly transferring to the City of Grand Haven a second parcel of land adjacent to the existing Duncan Park (previously deeded by means of a charitable trust) for the purposes of adding to the existing Duncan Park property. See **Exhibit B**,

---

[1] Wallace K. Ewing, Ph.D., Northwest Ottawa County Encyclopedia of History, Vol. II Buildings and Sites, Business and Industries, Topics, Bibliography, 2 (2017), http://loutitlibrary.org/wp-content/uploads/HISTdirectoriesII.pdf (last visited March 16, 2020).
[2] Id. at 187.
[3] City of Grand Haven, https://grandhave.org/visitors/parks/duncan-woods (last visited March 2, 2020).

("Quit Claim Deed"). Money for the maintenance of the park came from a trust fund set up by Mrs. Duncan in 1920.[4]

## PROCEDURAL HISTORY

The historical context of the present action is telling. For the last decade, Duncan Park, created by a charitable trust to benefit the citizens of Grand Haven, has been the unfortunate subject of several lawsuits. These lawsuits (the "*Nash* litigation") were initiated and pursued by Plaintiffs' counsel, Attorney Tallman, in Michigan's circuit, probate, and appellate courts. *See Nash v. Duncan Park Commission et al*, 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *lv app. den'd*, 501 Mich. 953, 904 N.W.2d 864 (2018). The present action is the most recent in a series of lawsuits involving Duncan Park and the City of Grand Haven.

The first of the many Duncan Park lawsuits stemmed from a tragic sledding accident on December 31, 2009, which resulted in the death of 11-year-old Chance Aaron Nash. *Id.*

The first lawsuit, filed in November 2010 against the Duncan Park Commission, alleged negligence in maintaining the park and a failure to warn of park dangers. *Id.* The Ottawa County Circuit Court granted summary disposition to the Duncan Park Commission in that matter, finding that the Duncan Park Commission was a political subdivision entitled to governmental immunity under the governmental tort liability act, MCL 6981.1401 *et seq.; Id.*

A second suit was filed in April 2012 by Chance Nash's estate against the Duncan Park Trust and the Park Trustees individually. This complaint alleged negligence and gross negligence claims. *Id.* The Ottawa County Circuit Court granted summary disposition to the Trust and to the individual trustees in their roles as Commissioners and Trustees. The Circuit Court in that case

---

[4] Mrs. Duncan and the Grand Haven Women's Club would later raise the money needed to construct the Michigan fieldstone pillars at each of the park's entrances. Mlive, https://www.mlive.com/grand-haven/2011/03/duncan_park.html (last visited March 2, 2020).

determined that Duncan Park Trust was a governmental unit of the City of Grand Haven and not a trust. "Because there was no trust, there could be no trustees." *Id*. The Michigan Court of Appeals later concluded there was a valid trust created, "which transferred legal ownership of the land to the three trustees and *not* to the City of Grand Haven," such that governmental immunity did not apply to either the Trust or the Commission. *Id*. (emphasis in original).

On March 4, 2013 the City of Grand Haven enacted Ordinance No. 13-10, attached as **Exhibit C** ("2013 Ordinance"). The 2013 Ordinance was enacted in good faith and out of necessity. See **Exhibit D** ("Declaration of Scott G. Smith"). As a result of the *Nash* litigation and potential personal liability exposure, one of the three then-serving Duncan Park trustees resigned service and the other two disagreed so vehemently on how to operate Duncan Park that no governance of Duncan Park could be had. See **Exhibit D**.

The 2013 Ordinance repealed and amended sections of the 1994 Ordinance. Notably, the amendments included:

- Establishing a mechanism by which the Mayor of the City of Grand Haven would initially appoint five, rather than three, park commissioners for staggered five-year terms with vacancies to be filled by appointment by the mayor subject to City Council approval; and

- Permitting the City Council to remove commissioners for misfeasance, malfeasance or nonfeasance in office. See **Exhibit C**.

Enacting the 2013 Ordinance was an affirmative step toward ensuring that Duncan Park remained a public park for the benefit of the people of Grand Haven, consistent with Mrs. Duncan's intent. See **Exhibit D1** ("Declaration of Patrick McGinnis").

Mr. Tallman and the Nash Estate pursued lawsuits involving Duncan Park from November 2011 until August 2017 when the Michigan Supreme Court declined to grant their request for leave to appeal.

Amid the above litigation, there were also two petitions concerning Duncan Park filed in the Ottawa County Probate Court in 2015. In the first petition, the Petitioner is The Estate of Chance Aaron Nash, represented by Mr. Tallman (who is described as a "creditor and interested party in the Duncan Park Trust") and attorney Robert Brower. The Estate of Chance Nash filed a Petition For The Appointment Of A Successor Trustee, attached as **Exhibit E**, of the Duncan Park Trust following the resignation of all existing park trustees. The estate sought not only the appointment of a new trustee, but also requested to select its own successor trustee rather than have the Court appoint one of its own choosing. See **Exhibit E**. Below are representations[5] made by petitioner significant to the present action:

> 9. In March 2013, the Duncan Park Trustees resigned . . . ***a new Commission was formed by the City of Grand Haven . . . and new Commissioners were appointed*** . . .
>
> * * *
>
> 12. The Trust instrument provides that, on the application of any citizen of Grand Haven, the Chancery Court shall "take charge of this trust and appoint a suitable 'DUNCAN PARK COMMISSION' to fulfill and carry out the terms of the trust."
>
> 13. Under the applicable provisions of The Michigan Trust Code, MCL 700.7203 . . . this court has the ***exclusive jurisdiction*** to appoint a successor trustee(s).
>
> 14. Petition is not aware of any specific individual that is a resident of Grand Haven who would be willing and capable of acting as a successor trustee in this case.
>
> 15. Petitioner believes ***that it is in the best interests of the Trust*** for this Court to appoint a successor trustee.

**See Exhibit E**, emphasis added.

---

[5] In the current matter, Attorney Tallman has now brought new claims that contradict the representations in the above referenced petition. See **Exhibit E**.

The second petition was filed by the City of Grand Haven and sought reformation of the Duncan Park Trust. See **Exhibit F** ("Petition for Reformation"). In its Petition for Reformation of the Duncan Park Trust, the City explained that the 2013 Ordinance was required because:

> (1) "members of the governing body of Duncan Park may risk personal liability due to the Court of Appeals' determination that the body is not entitled to governmental immunity; (2) "Duncan Park has traditionally received financial support from organizations, such as The Grand Haven Community Foundation, that may provide funding only to governmental and charitable entities. As currently structured, the Duncan Park Commission may not qualify"; and (3) the 1913 Trust Deed requirements did not comply with or reflect modern laws applicable to "governing bodies that oversee public property," including the reality that a "three-member governing body [could lead to] gridlock" and the related inability to "fill its own vacancies if one member is unable to vote and the other two members do not agree." See **Exhibit F**.

The Michigan Attorney General received the proposed Petition For Reformation of the Duncan Park Trust from the City (it did not receive the Petition submitted by the estate.) Assistant Attorney General William R. Bloomfield executed a waiver for notice of the hearing and did not object to the City's petition for Reformation of the Duncan Trust. The executed waiver is attached as **Exhibit G** ("Waiver").

A hearing on the Petition for Reformation of the Duncan Park Trust was held on January 11, 2016 and the City's Petition was consolidated with the Estate of Chance Nash's Petition for Appointment of Successor trustee. The Probate Court Opinion was issued on January 21, 2016. See **Exhibit H**, ("Probate Court Opinion").

After the Michigan Court of Appeals' decision regarding the lack of governmental immunity in the *Nash* litigation (and remand, additional pleading, and discovery), the Duncan Park Commission, the Trust, and individual trustees moved for summary judgment on the tort

claims. The Ottawa County Circuit Court issued an opinion on February 3, 2016, granting summary disposition in favor of the defendants and the Court of Appeals affirmed. *Id.*

The current complaint is linked to the prior proceedings involving the charitable trust, which was correctly reformed by the Michigan Probate Court to effectuate the purpose of the trust. The modification of the trust was affirmed by the *Nash* opinion issued by the Michigan Court of Appeals.

On February 29, 2016, the Ottawa County Probate Court consolidated plaintiff's and defendant's Petitions and ordered that:

> The city of Grand Haven's Petition for Reformation of the Duncan Park Trust was granted for reasons stated in the Court's January 21, 2016 Opinion.
>
> That the Estate of Chance Nash's Petition for Appointment of Successor Trustee was denied for reasons state in the Court's January 21, 2016 Opinion,
>
> That (1) the City of Grand Haven is appointed as sole successor trustee of the Duncan Park Trust; (2) the Duncan Park Trust is reformed to allow the City to adopt an amendment to its Duncan Park Ordinance containing provisions for a governing board of five or more members appointed by the City Council for limited terms, and removable for misfeasance, malfeasance, or nonfeasance; and (3) that the order may provide such other terms and conditions as the City finds necessary for the effective administration of Duncan Park.

See **Exhibit I** ("Order").

## STATEMENT OF THE UNDISPUTED FACTS

In its October 21, 2019 Order granting Michigan Attorney General Nessel's Motion for Leave to Intervene (ECF No. 39, PageID.265-67), this Court described the general facts at issue in this case as follows:

> This case centers on the disputed ownership of the land that comprises Duncan Park in the City of Grand Haven, Michigan.

9

> Over 100 years ago, Martha Duncan created Duncan Park in Grand Haven, Michigan. She did so by trust deed dated October 22, 1913. Her conveyance was to three named trustees "for and in behalf of the People of the City of Grand Haven," and her instructions were that the "land shall always be held and used as a public park … and shall always be called, known, and designated as 'Duncan Park.'" (ECF No. 1-1.) The trust deed includes provision designed to ensure that Ms. Duncan's directions are followed, including what plaintiffs describe as a reverter provision. Plaintiffs' fundamental claim is that the conduct of the City of Grand Haven has triggered the provision, thus requiring reverter of the property to the heirs of Ms. Duncan. [10-21-19 Order, ECF No. 39, PageID.265.]

Plaintiffs do not contend that the City of Grand Haven failed to comply with the terms and conditions of Mrs. Duncan's trust for nearly 100 years or so – until the City of Grand Haven repealed an ordinance that allegedly triggered a reverter provision in the original trust. Nor do Plaintiffs dispute that the trust was created for a charitable purpose, i.e. "for and in behalf of the People of the City of Grand Haven" to be "used as a public park." And finally, there is no dispute that the Duncan Park property, although no longer under the control of three trustees as originally contemplated by Mrs. Duncan more than 100 years ago, remains a public park for the benefit of the citizens of Grand Haven, Michigan and continues to be designated as "Duncan Park" in accordance with Mrs. Duncan's wishes.

## SUMMARY OF ARGUMENT

The Attorney General disputes Plaintiff's challenge to Michigan's charity statutes, as well as their related claim that the Ottawa County Probate Court erred in modifying the charitable trust[6] including Plaintiffs' characterization of the continued operation of Duncan Park as a "taking" in violation of the Fifth Amendment of the United States Constitution.

---

[6] This posture is contrary to the representations made in the Petition filed on behalf of Attorney Tallman and the Estate of Chance Nash, see **Exhibit E**.

The Charitable Gifts, Grants, Bequests and Devises Act ("Charitable Gift Act") Mich. Comp. Laws. §§ 554.351 – 554.353, directs the Attorney General to enforce the intentions of charitable donors. See Mich. Comp. Laws § 554.352. The Attorney General believes that the Ottawa County Probate Court reasonably concluded: (1) that Mrs. Duncan's conveyance of the land to be used as a public park was a charitable gift; (2) that the trust deed established a charitable trust; and (3) as a charitable trust, Duncan Park is subject to the provisions of the Estate and Protected Individuals Code ("EPIC"), Mich. Comp. Laws. § 700.1101 *et seq. Nash*, 848 N.W.2d at 446. The Attorney General accordingly supports Mrs. Duncan's charitable intentions as determined by the probate court.

The Attorney General further believes that the probate court correctly appointed the City of Grand Haven the sole trustee of the reformed trust. An action affirmed by the Court of Appeals. *Id*.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A motion for summary judgment tests whether there is factual support for a claim. Where the factual allegations of the complaint are accepted as true, the mere legal conclusions are not, and a court must grant summary judgment.

## ARGUMENT

A. **Count I of Plaintiffs' Complaint asserts a claim of quiet title based on the repeal and amendment of an ordinance by the City of Grand Haven. Plaintiffs lack standing and a legal basis to challenge the charitable trust at issue in this case.**

Under Mich. Comp. Laws §§ 700.7412 and 700.7413, even if Plaintiffs or others are Duncan's heirs, the "reverter clause" set forth in the October 1913 trust is without effect where,

11

as here, the transfer of the Duncan Park property was for a charitable purpose, the method for administering that trust as originally contemplated by Duncan became impracticable, Duncan is deceased, and more than 50 years have elapsed since the date of the trust's creation.

### i. The Ottawa County Probate Court properly modified the terms of the trust.

The October 22, 1913 trust document transferred property in trust for the benefit of the people of the City of Grand Haven, Michigan for a charitable purpose. The Michigan Trust Code ("MTC"), Mich. Comp. Laws §§ 700.7101-700.7913, which is a codification of the law of trusts in Michigan, applies and governs the trust that Duncan created. § 7105 of the MTC sets forth the duties and powers of trustees and states, in relevant part, as follows:

> (1) Except as otherwise provided in the terms of the trust, this article governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a trust beneficiary.
>
> (2) The terms of a trust prevail over any provision of this article except the following:
>
> * * *
>
> (d) The power of the court to modify or terminate a trust under sections 7410, 7412(1) to (3), 7414(2), 7415, and 7416.

Thus, notwithstanding the terms of Duncan's trust creating Duncan Park for the people of Grand Haven, a court has the authority to modify or terminate the trust under certain circumstances as set forth in the statutes identified in MTC § 7105(2)(d) and, more specifically § 7412(1) to (3), which provides:

> (1) The court may modify the administrative terms of a trust if continuation of the trust on its existing terms would be impracticable or wasteful or impair the trust's administration.
>
> (2) The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further

> the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention.
>
> (3) If the trust is terminated under this section, the trustee shall distribute the trust property as ordered by the court.

MTC § 7412(4) further provides that "[n]otice of any proceeding to terminate or modify a trust shall be given in the manner described in section 7411(3)." While notice under § 7411(3) is required to be provided to certain individuals, it does not require notice to Duncan's alleged heirs under the circumstances of this case. Mich. Comp. Laws § 700.7411(3) provides that "[n]otice of any proceeding to terminate or modify a trust must be given to the settlor, the settlor's representative if the petitioner has a reasonable basis to believe the settlor is an incapacitated individual, the trust director, if any, a powerholder described in subsection (1)(b) or (c), if any, the trustee, and any other person named in the terms of the trust to receive notice of such a proceeding." See also Mich. Ct. Rule. 5.125(33), which also does not require notice to Duncan's alleged heirs.

Here, there has already been extensive litigation as it pertains to the Duncan Park property. Indeed, the Michigan Court of Appeals affirmed the Ottawa County Probate Court's decision to reform the initial trust and name the City of Grand Haven as the sole trustee of the Duncan Park property. See *Nash v. Duncan Park Comm'n*, No. 331869 (Mich. Ct. App., Aug. 10, 2017 (unpublished), attached as **Exhibit J**. In its opinion, the Michigan Court of Appeals determined that the probate court did not err in finding that the trust terms had become impracticable and that Mich. Comp. Laws § 700.7412(1) warranted modification of the trust as it pertained only to the trustee. (**Exhibit J**, pp. 13-15). In all other respects, however, the Duncan Park property remained, and still is, a park used for the benefit of the people of the City of Grand

13

Haven. And as previously stated, neither Plaintiffs nor the proposed additional heirs of Duncan were entitled to notice with respect to the trust modifications under MTC § 7412.

Accordingly, because the Ottawa County probate court modified the terms of the trust in accordance with MTC § 7412(1), the reverter provision in the original trust was without effect. Moreover, neither Plaintiffs nor Duncan's heirs were entitled to notice of the modification to the trust and have no property interest in Duncan Park.

### ii. Because the trust creating Duncan Park was for a charitable purpose, and because Duncan is deceased and the trust was created more than 50 years ago, the reverter clause in the original trust is without effect.

While the duties and powers of trustees set forth in MTC § 7015, and a court's authority to modify or terminate a trust under § 7412, apply to all trusts, MTC § 7413 applies specifically to charitable trusts and allows for modification of a charitable trust under the doctrine of cy pres. It is this cy pres doctrine, applicable here, which provides additional support for why this Court should grant Intervenor's Motion for Summary Judgment.

The doctrine of cy pres "is a saving device applied to charitable trusts so that when the specific purpose of the settlor cannot be carried out, his charitable intention can be fulfilled as nearly as possible." *In re Rood's Estate*, 41 Mich. App. 405, 415; 200 N.W. 2d 728, 734 (1972). In this instance the Ottawa County Probate Court properly determined that the trust terms, as originally contemplated by Mrs. Duncan, had become impracticable. See **Exhibit J**. Under such circumstances, the probate court was authorized to apply cy pres to modify the trust to carry out Duncan's original intent. Specifically, MTC § 7413 provides, in relevant part, as follows:

> (1) Except as otherwise provided in subsections (2) or (3), if a particular charitable purpose becomes unlawful, impracticable, or impossible to achieve, no alternative taker is named or provided for, and the court finds the settlor had a general, rather than a specific, charitable intent, all of the following apply:

14

> (a) The trust does not fail, in whole or in part.
>
> (b) The trust property does not revert to the settlor or the settlor's successors in interest.

While subsections (2) and (3) of § 7413 limit the circumstances under which a court may modify a charitable trust, those circumstances do not apply here. Subsection (2) applies where the trust confers the power on the trustee or another person to modify the trust in favor of another charitable trust, gift or purpose, which is not applicable here under the terms of Duncan's trust. And subsection (3) of § 7413 states:

> A provision in the terms of a charitable trust that would result in distribution of the trust property to a noncharitable beneficiary prevails over the power of the court to apply cy pres to modify or terminate the trust *only if*, when the provision takes effect, either of the following applies:
>
> (a) The trust property is to revert to the settlor and the settlor is still living.
>
> (b) Less than 50 years have elapsed since the date of the trust's creation.

Here, the settlor of the trust, Mrs. Duncan, is not alive, so the Duncan Park property could not have reverted to her, and more than 50 years have elapsed since the trust's creation. Accordingly, the Ottawa County probate court was authorized to modify the trust under either § 7412(1) or § 7413. Under either provision of the MTC, Duncan's heirs do not have a property interest in the Duncan Property.

The repeal of the ordinance did not defeat Mrs. Duncan's creation of the Duncan Park charitable trust; once an asset is gifted to charity, it should continue to be dedicated to charitable purposes so long as the donor had a general charitable intent. "Heirs and personal representatives of a donor have no beneficial interest reverting or accruing to themselves from the breach or non-

15

execution of a trust for a charitable use." 2 Perry on Trusts and Trustees (7th Ed.). p. 1273. Accordingly, this Court should grant Intervenor's Motion for Summary Judgment.

B. **Counts II and III which allege unlawful "taking" claims under the Fifth Amendment of the United State Constitution and Article X of the Constitution of Michigan of 1963, fail because Plaintiffs lack a vested property right.**

"Both the state and federal constitutions provide that private property shall not be taken without due process of law or just compensation" *Attorney General v Mich Pub Serv Comm*. 249 Mich App 424, 435; 642 NW2d 691 (2002). Plaintiffs must first establish that a vested property right is affected before they can assert a claim of uncompensated taking. *Id.* "To constitute a vested right, the interest must be something more than such a mere expectation . . ." *Id.* A vested right "must have become a title, legal or equitable, to the present or future enjoyment of property." *Id.* Absent a property right, there is no basis for Plaintiffs to allege "a confiscatory taking without due process of law." *Id.*

Duncan Park consists of two parcels of adjacent land. The first (and larger parcel) conveyed to the charitable trust by means of the trust and the second conveyed directly to the City of Grand Haven in fee simple for use and as part of Duncan Park by Quit Claim Deed. See **Exhibits A** and **B**. Plaintiffs cannot assert a property claim to the second parcel of land comprising Duncan Park or that parcel that was transferred in fee simple. The first and larger parcel of land was conveyed by means of a charitable trust for the creation of Duncan Park. The creation of a park for use by the public was a charitable purpose consistent with public policy and capable of being achieved in 1913 and remains so today. See Mich. Comp. Laws § 700.7404. For more than 100 years the Duncan Park Commission, City of Grand Have and Michigan Courts have endeavored to facilitate the fulfillment of Mrs. Duncan's charitable intentions despite the constant barrage of litigation.

16

The administration of a charitable trust is to be guided by how to serve the beneficiaries' best interests. Plaintiffs are not the intended beneficiaries of the Duncan Park Trust. They lack standing, a vested property interest, authority to seek enforcement of the trust via a trigger of the reverter clause, and consequently fail to show any property interest in Duncan Park to support their Constitutional Takings claim. Authority to enforce a charitable trust under the MTC is articulated in §700.7405(3):

> (3) The settlor, a named beneficiary or the attorney general of this state, among others, may maintain a proceeding to enforce a charitable trust. The right of the settlor of a charitable trust to enforce the trust is personal to the settlor and *may not be exercised by* any of the following:
> (a) **The Settlor's heirs**, assigns, or beneficiaries.
> (b) The settlor's fiduciary, other than the trustee of the charitable trust the enforcement of which is being sought.
> (c) An agent of the settlor acting pursuant to a durable power of attorney, unless the right to enforce the trust is expressly conferred on the agent by the power of attorney

(emphasis added).

The Michigan Ottawa County Probate Court modified the administrative terms of the Duncan Park Trust consistent with MTC § 7412(1) when the terms became "impracticable or wasteful or impair[ed] the trust's administration". See **Exhibit H.** Because Plaintiffs have no vested property right in Duncan Park, their 5th Amendment Taking Claim as set forth in Counts II and III fail as a matter of law.

C. **Count IV of the complaint alleged a failure to "receive notice and an opportunity to be heard." Plaintiffs however, were not entitled to such notice and, therefore, this claim fails.**

The Court should reject Plaintiffs' claim that their rights were violated because they did not receive notice of the Probate Court proceedings that resulted in reformation of the charitable trust. As stated in section A(i) of this brief, the Plaintiffs were not entitled to notice prior to the

Probate Court's reformation of the charitable trust. In addressing the authority of the court to modify a trust under MTC §7412 subsection (4) points to MTC §7411(3) for notice requirements prior to such proceedings. It provides that "(3) Notice of any proceeding to terminate or modify a trust must be given to the settlor, the settlor's representative if the petitioner has a reasonable basis to believe the settlor is an incapacitated individual, the trust director, if any, a powerholder described in subsection (1)(b) or (c), if any, the trustee, and any other person named in the terms of the trust to receive notice of such a proceeding."

Plaintiffs are none of the parties identified as entitled to notice and consequently were not denied notice or the opportunity to be heard. Accordingly, this claim is without merit and should be denied.

## **CONCLUSION**

For the reasons stated above, the Attorney General requests that the Court grant its motion for summary judgment and dismiss the complaint with prejudice, and grant any other appropriate relief.

Respectfully Submitted,

Dana Nessel
Attorney General

*/s/ Julia Dale*
James E. Long (P53251)
Julia Dale (P63904)
Assistant Attorneys General
Attorneys for Defendant - Intervenor
Corporate Oversight Division
P.O. Box 30736
Lansing, MI  48909
(517) 335-7632
Longj@michigan.gov
dalej@michigan.gov

**CERTIFICATE OF COMPLIANCE WITH W.D. MICH. LCIV.R. 7.2(b)**

I, Julia Dale, counsel for Defendant-Intervenor, certify that the Defendant-Intervenor's Brief for Summary Judgment complies with Local Rule 7.2(b)(i).

I further certify that, in preparation of the above document, I used Microsoft Office 365, and that this word processing program has been applied specifically to include all text, including headnotes, footnotes, and quotations in the following word count.

I further certify that the above document contains the following number of words: 4,966.

        Respectfully Submitted,

        Dana Nessel
        Attorney General

        */s/ Julia Dale*
        James E. Long (P53251)
        Julia Dale (P63904)
        Assistant Attorneys General
        Attorneys for Defendant - Intervenor
        Corporate Oversight Division
        P.O. Box 30736
        Lansing, MI  48909
        (517) 335-7632
        Longj@michigan.gov
        dalej@michigan.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on March 16, 2020, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF system, which will provide electronic notices and copies to all counsels of record.

      Respectfully Submitted,

      Dana Nessel
      Attorney General

      */s/ Julia Dale*
      James E. Long (P53251)
      Julia Dale (P63904)
      Assistant Attorneys General
      Attorneys for Defendant - Intervenor
      Corporate Oversight Division
      P.O. Box 30736
      Lansing, MI  48909
      (517) 335-7632
      Longj@michigan.gov
      dalej@michigan.gov