UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY LAPINSKE, et al.,

        Plaintiffs,

                              CASE NO. 1:19-CV-162

v.

                              HON. ROBERT J. JONKER

CITY OF GRAND HAVEN,

        Defendant,

and

DANA NESSEL, MICHIGAN ATTORNEY
GENERAL, in her official capacity,

        Defendant-Intervenor.

_____/

## OPINION AND ORDER

This case centers on one parcel of the land comprising Duncan Park in the City of Grand Haven, Michigan. Over 100 years ago, Martha Duncan created Duncan Park in Grand Haven, Michigan. She did so by Trust Deed dated October 22, 1913. Her conveyance was to three named trustees "for and in behalf of the People of the City of Grand Haven," and her instructions were that the "land shall always be held and used as a public park … and shall always be called, known, and designated as 'Duncan Park.'" (ECF No. 1-1.) The Trust Deed includes provisions designed to ensure that Ms. Duncan's directions are followed, including what Plaintiffs describe as a reverter provision. Plaintiffs' fundamental claim is that the City of Grand Haven has triggered the provision, thus requiring reverter of the property to the heirs of Ms. Duncan.

## INTRODUCTION

All parties have moved for summary judgment.  ECF Nos. 71, 74, 76.  The matter has been exhaustively briefed.  ECF Nos. 72, 74, 77, 82, 84, 86, 88, 89.  What is beyond all dispute is that Ms. Duncan's instructions that the "land shall always be held and used as a public park" bearing her surname has been scrupulously honored for 107 years.  Plaintiffs are heirs of Ms. Duncan whose theory would put an end to that.  Their claim is that changes the City of Grand Haven made in the administrative mechanisms that ensure the property remains a public park ended the Trust and triggered the reverter clause vesting title back in them.  The Court disagrees.  All of the changes to which Plaintiffs point were circumstantial adjustments that had the purpose and effect of making it possible to continue Ms. Duncan's overriding wish to leave the people of Grand Haven in perpetuity with a public park in her name.

## FACTS

### A.    The Trust

Robert and Martha Duncan owned the property now known as Duncan Park.  Robert died, leaving Martha as the sole owner.  On October 22, 1913, Ms. Duncan signed a Trust Deed creating Duncan Park.  The Trust Deed requires on pain of reversion that the property always be a public park bearing her name:

> [The property] shall be at all times known and described as "DUNCAN PARK" and said described parcel of land shall always be held and occupied by said grantees for and in behalf of the Citizens of the City of Grand Haven as a public park, for the use and enjoyment of the citizens or inhabitants of Grand Haven, and for no other purpose, and this gift and grant hereby made is subject to the express limitations and is on the express conditions that such parcel of land shall always be held and used as a public park as aforesaid, and shall always be called, known and designated as "DUNCAN PARK," and should said parcel of land cease to be so held and used as a public park, and in case the Council or said Trustees shall neglect or refuse to carry out in good faith all of the terms and

> conditions herein specified, then the premises so dedicated as above, with all improvements, shall revert to the first party herein, her heirs, executors or assigns and become again vested in her, or her heirs, as fully as if such dedication had never been made; and she, her heirs, or executors, may then enter upon and take possession of said premises and thenceforward hold the same as fully as if this dedication had never been made.

Trust Deed, Third Section.  All parties agree that the property has continuously been maintained and operated as a public park known as Duncan Park.

The Eighth and Ninth Sections of the Trust Deed address the administrative structures to ensure the perpetuation of Ms. Duncan's vision.  The Eighth Section calls for an original Ordinance creating a Duncan Park Commission to carry out the purpose of the Trust:

> [The Trust Deed] is given on the express condition that the . . . City of Grand Haven shall, on the acceptance [of the Trust Deed], pass an ordinance satisfactory to the Grantor, creating a "DUNCAN PARK COMMISSION" as herein provided, and providing for its perpetuation in the manner herein specified; also providing for the care and maintenance of said DUNCAN PARK. The repeal of said Ordinance, or any part thereof, at any future time, shall render this Deed null and void and makes the same of no effect.

The Ninth Section expressly recognizes, however, that the original Duncan Park Commission could cease to exist for a variety of unforeseen reasons and provides a mechanism to ensure that the overriding purpose of the Trust could nevertheless continue.  Specifically, this Section provides:

> If at any time in the future the "DUNCAN PARK COMMISSION" shall cease to exist, the Circuit Court for the County of Ottawa in Chancery, or such Court as shall succeed the same, shall, on the application of any Citizen of the City of Grand Haven, take charge of this trust and appoint a suitable "DUNCAN PARK COMMISSION" to fulfill and carry out the terms of the trust for the benefit of the Citizens of the City of Grand Haven; and the Commission so appointed shall thereafter choose its own successors in the same manner as herein provided.

As it turns out, Ms. Duncan had not only charitable intent but also sensible foresight in crafting these provisions.

**B.      A Tragic Accident and its Legal Aftermath**

Nearly a century after Ms. Duncan created the park, an 11-year-old boy tragically died in a sledding accident in Duncan Park. The accident triggered extensive litigation over responsibility for the accident. *See Nash v. Duncan Park Comm'n et al.*, 2017 WL 3441404 (Mich. Ct. App. August 10, 2017), *lv app. den'd*, 501 Mich. 953, 904 N.W.2d 864 (2018).[1] The original accident case named the Duncan Park Commission as defendant, and the Commission prevailed on a governmental immunity theory. A second accident case was then filed against the individual trustees, who also prevailed.

The reasoning of the Court's ruling in the trustees' favor, however, triggered the next wave of litigation. At issue was whether Ms. Duncan had created a real trust, as her documents surely seemed to say, or whether she had actually gifted the property outright to the City, as the trial judge appeared to believe in ruling in favor of the individual trustees. The Michigan Court of Appeals settled the issue and ruled that the 1913 Trust Deed really did create a trust. *Nash v. Duncan Park Comm'n*, 304 Mich. App. 599 (2014).[2] This meant the property was owned not by the City, but

---

[1] Plaintiffs' counsel in the accident case, and all the related litigation, is now representing Ms. Duncan's heirs in this case. The Court sees nothing improper in this, but notes it because it makes clear that lawyers and parties on both sides of the case are fully acquainted with the extensive litigation history. The Court will not detail here all the litigation history described in the Michigan Court decisions.

[2] The Michigan Supreme Court partially vacated this decision, but did not disturb the conclusion that Ms. Duncan created a real trust. 497 Mich. 1016 (2015). The vacatur addressed the issue of whether the Duncan Park Commission was a board of the City of Grand Haven, as the Court of Appeal had said. The Michigan Supreme Court did not take a position one way or the other but said the Court of Appeals should not have reached the issue at all because the parties had not raised it.

by the individual trustees. But all the individual trustees had resigned in the wake of the accident litigation against them, creating a new set of management problems and yet more litigation.

The new round opened in Probate Court over who would become the new trustees of the Duncan Park Commission.  No individuals were willing to step up for obvious reasons, and so Plaintiffs' counsel asked the Probate Court to appoint a successor.  The City filed its own petition asking the Probate Court to appoint the City as the sole trustee since no individuals were willing to take on the risk.  The Probate Court granted the City's petition and reformed the Trust accordingly.  The Court of Appeals affirmed these changes in *Nash, supra*, 2017 WL 3441464, at ** 8-12.

Through it all, Duncan Park remained a public park and remains so to this day.

**C.      This Case**

Plaintiffs' Amended Complaint states four causes of action:  (1) Quiet Title; (2) Federal Constitution Taking Claim; (3) State Constitution Taking Claim; and (4) Federal Due Process Claim.   All claims depend on the same contention:   namely, that the management and administrative changes in the Trust begun by the City and culminating in the State Court's reformation, violated the terms of the Trust and triggered the reverter.  The Court disagrees.

It is certainly true that the administrative structure of the Trust has changed.  In particular, there are no longer individual trustees serving on a body called the Duncan Park Commission.  Instead, the City itself functions as the Trustee.  There is nothing untoward about that on the facts of this case.  To the contrary, Ms. Duncan expressly recognized that the original Duncan Park Commission might cease to exist for reasons beyond the City's control.  And she provided in her Trust for a mechanism to address that so her overall charitable intention could be honored in perpetuity anyway.  The mechanism she called for was a petition through the Michigan

5

courts for appropriate relief.  That is exactly what happened, culminating in the formal reformation

of the Trust as affirmed by the Court of Appeals  Ms. Duncan surely could not have foreseen the

specific details of what would trigger the structural changes, but she did foresee the potential need

for changes.  And she made it clear that maintaining a public park bearing her name in perpetuity

was the overriding goal even if the original Duncan Park Commission "ceased to exist" for some

unforeseen reason.  She entrusted the job of preserving her charitable purpose to the State Courts,

who ultimately reformed that Trust to ensure her park remained intact.

The Court does not see the case as any more complicated than that.  A ruling for the

Plaintiffs here would for the first time in 107 years threaten the fundamental purpose Ms. Duncan

had:  namely, to provide a public park bearing her name for the people of Grand Haven to

enjoy.  The original trustees, the City of Grand Haven and the Courts of the State of Michigan

have ensured the continuation of that purpose by changing the administrative structure and

mechanisms of the Trust.  Ms. Duncan herself recognized and provided for the road map that

would make those kinds of changes possible if and when made by the appropriate public authority

in the overall service of maintaining Duncan Park in perpetuity.  A ruling for Plaintiffs would upset

that vision and risk continued operation of the park for the first time in 107 years.  In the Courts'

view, nothing in the Trust Deed could be clearer than that Ms. Duncan did not and would not want

that to happen.[3]

---

[3] Even if the reverter provision had been triggered——and the Court does not believe it has been—
the reverter would not be enforceable because more than 50 years have passed since the original
creation of the right, and Ms. Duncan is no longer living.  MCLA 700.7413.  The reverter would
fail, and the Michigan Courts would have the right and responsibility to apply *Cy Pres*.

Accordingly, Plaintiffs' Motion for Summary Judgment (ECF No. 76) is **DENIED**.  The

Motions of the Defendant (ECF No. 71) and Intervenor (ECF No. 74) are **GRANTED**.  Judgment

will enter against Plaintiffs.


Dated:  ___March 4, 2021___          /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     CHIEF UNITED STATES DISTRICT JUDGE